No. 25-6714

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

EVA LIGHTHISER; et al.,
*Plaintiffs-Appellants*,

v.

DONALD J. TRUMP, in his official capacity as President
of the United States; et al.,
*Defendants-Appellees*,

STATE OF MONTANA; et al.,
*Defendants/Intervenors-Appellees*.

On Appeal from the United States District Court
for the District of Montana – Butte Division (No. 2:25-cv-00054-DLC)
Hon. Dana L. Christensen

**APPELLANTS' REPLY BRIEF**

Roger Sullivan
McGARVEY LAW
345 1st Avenue East
Kalispell, MT 59901
(406) 752-5566
rsullivan@mcgarveylaw.com

Julia A. Olson
Andrea K. Rodgers
Nathan Bellinger
OUR CHILDREN'S TRUST
1216 Lincoln Street
Eugene, OR 97401
(415) 786-4825
julia@ourchildrenstrust.org
andrea@ourchildrenstrust.org
nate@ourchildrenstrust.org

Philip L. Gregory
GREGORY LAW GROUP
1250 Godetia Drive
Redwood City, CA 94062
(650) 278-2957
pgregory@gregorylawgroup.com

Daniel C. Snyder
Haley Nicholson
PUBLIC JUSTICE
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 797-8600
dsnyder@publicjustice.net
hnicholson@publicjustice.net

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION ............................................................................................... 1

ARGUMENT ...................................................................................................... 2

    I.    Plaintiffs' Injuries Are Redressable ........................................................ 2

        A.    The Court Has the Power to Award the Requested Relief ..................... 3

        B.    The Relief Requested is Workable ....................................................... 7

        C.    The Relief Requested Will be Meaningful ........................................ 13

    II.    Plaintiffs Have Satisfied Injury and Traceability .................................. 21

        A.    The District Court Correctly Determined that Plaintiffs Suffer Cognizable Injuries-in-Fact ............................................................... 22

        B.    The District Court Correctly Determined that Plaintiffs' Injuries-in-Fact are Fairly Traceable to the Challenged Executive Orders ............. 26

    III.    Plaintiffs Need Not Proceed Under the APA ......................................... 28

    IV.    If Standing is Not Properly Alleged, Plaintiffs Should Be Granted Leave to Amend ................................................................................... 29

    V.    Remand is Warranted and Plaintiffs Have Stated Fifth Amendment and Ultra Vires Claims ............................................................................... 29

    VI.    The EOs' Boilerplate Proviso Does Not Save Them ............................. 34

CONCLUSION ................................................................................................. 35

i

## TABLE OF AUTHORITIES

**Cases**

*Am. Fed'n of Gov't Emps. v. Trump*,
139 F.4th 1020 (9th Cir. 2025) ....................................................................34, 35

*Am. Fed'n of State Cnty. & Mun. Emps., AFL-CIO v.*
*U.S. Off. of Mgmt. & Budget*,
No. 25-CV-08302-SI, 2025 WL 3654116 (N.D. Cal. Dec. 17, 2025) ................12

*Atmus Filtration, Inc. v. United States*,
No. 26-01259, 2026 WL 661636 (Ct. Int'l Trade Mar. 6, 2026) ..........................9

*Bldg. & Const. Trades Dep't, AFL-CIO v. Allbaugh*,
295 F.3d 28 (D.C. Cir. 2002) ...............................................................................20

*Bolling v. Sharpe*,
347 U.S. 497 (1954) .............................................................................................5, 6

*Bonnichsen v. United States*,
367 F.3d 864 (9th Cir. 2004) ..................................................................................3

*Brown v. Bd. of Educ.*,
347 U.S. 483 (1954) .................................................................................................6

*Brown v. Stored Value Cards, Inc.*,
953 F.3d 567 (9th Cir. 2020) ................................................................................30

*City & Cnty. of San Francisco v. Trump*,
897 F.3d 1225 (9th Cir. 2018) .........................................................................34, 35

*City & Cnty. of San Francisco v. Trump*,
No. 25-CV-01350-WHO, 2025 WL 2243619 (N.D. Cal. Aug. 5, 2025).............34

*City & Cnty. of San Francisco v. U.S. Dep't of Just.*,
No. 25-CV-09277-JD, 2026 WL 177945 (N.D. Cal. Jan. 21, 2026) ...................12

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ...............................................................................................27

*Dalton v. Specter*,
511 U.S. 462 (1994) ...............................................................................................32

*Davis v. Passman*,
442 U.S. 228 (1979) ........................................................................................1

*Day v. Henry*,
152 F.4th 961 (9th Cir. 2025) ...............................................................7, 9, 10

*Dep't of Com. v. New York*,
588 U.S. 752 (2019) .......................................................................................15

*Dep't of Educ. v. Brown*,
600 U.S. 551 (2023) .......................................................................................29

*Diamond Alternative Energy, LLC v. Env't Prot. Agency*,
606 U.S. 100 (2025) ..............................................................................passim

*Ecological Rts. Found. v. Pac. Lumber Co.*,
230 F.3d 1141 (9th Cir. 2000).......................................................................25

*Epic Games, Inc. v. Apple Inc.*,
161 F.4th 1162 (9th Cir. 2025).........................................................................7

*Fed. Election Comm'n v. Akins*,
524 U.S. 11 (1998) ...................................................................................17, 25

*Foman v. Davis*,
371 U.S. 178 (1962) .......................................................................................29

*Gutierrez v. Saenz*,
606 U.S. 305 (2025) .......................................................................................18

*Haaland v. Brackeen*,
599 U.S. 255 (2023) .......................................................................................19

*Helling v. McKinney*,
509 U.S. 25 (1993) .........................................................................................25

*Idaho Conservation League v. Bonneville Power Admin.*,
83 F.4th 1182 (9th Cir. 2023).........................................................................27

*Ingraham v. Wright*,
430 U.S. 651 (1977) .......................................................................................33

iii

*Juliana v. United States*,
    947 F.3d 1159 (9th Cir. 2020)...............................................................passim

*Kirola v. City & Cnty. of San Francisco*,
    860 F.3d 1164 (9th Cir. 2017)...................................................................7, 9

*LaDuke v. Nelson*,
    762 F.2d 1318 (9th Cir. 1985),
    *amended*, 796 F.2d 309 (9th Cir. 1986).....................................4, 18, 31

*Laub v. U.S. Dep't of Interior*,
    342 F.3d 1080 (9th Cir. 2003) ...................................................................29

*Learning Resources, Inc. v. Trump*,
    146 S. Ct. 628 (2026) ..........................................................................passim

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) .....................................................................................26

*M.S. v. Brown*,
    902 F.3d 1076 (9th Cir. 2018......................................................................3

*Marbury v. Madison*,
    5 U.S. 137 (1803) .........................................................................................4

*Martinez v. City of Clovis*,
    943 F.3d 1260 (9th Cir. 2019) ...................................................................34

*Massachusetts v. EPA*,
    549 U.S. 497 (2007) .....................................................................................17

*Meese v. Keene*,
    481 U.S. 465 (1987) .....................................................................................13

*Miller v. Gammie*,
    335 F.3d 889 (9th Cir. 2003) .....................................................................17

*Mills v. Rogers*,
    457 U.S. 291 (1982) .....................................................................................32

*Mirabelli v. Bonta*,
    146 S. Ct. 797 (2026) ..................................................................................31

*Murthy v. Missouri*,
603 U.S. 43 (2024) ..................................................................27

*Myers v. United States*,
272 U.S. 52 (1926) ..................................................................20

*Navajo Nation v. Dep't of Interior*,
876 F.3d 1144 (9th Cir. 2017)................................................28

*New York v. Trump*,
777 F. Supp. 3d 112 (D.R.I. 2025)........................................11

*Pacito v. Trump*,
No. 25-1313, 2026 WL 620449 (9th Cir. Mar. 5, 2026)............................3, 29, 33

*Panama Ref. Co. v. Ryan*,
293 U.S. 388 (1935) ................................................................13

*Planned Parenthood of Greater Wash. & N. Idaho v.*
*U.S. Dep't of Health & Hum. Servs.*,
946 F.3d 1100 (9th Cir. 2020)................................................30

*Platt v. Moore*,
15 F.4th 895 (9th Cir. 2021) ..................................................20

*PPL Montana, LLC v. Montana*,
565 U.S. 576 (2012) ................................................................32

*Shulman v. Kaplan*,
58 F.4th 404 (9th Cir. 2023) ...............................................7, 9

*Sierra Club v. Trump*,
929 F.3d 670 (9th Cir. 2019) ............................................28, 32

*Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*,
968 F.3d 738 (9th Cir. 2020) ..................................................30

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ................................................................25

*Texas v. United States*,
86 F. Supp. 3d 591 (S.D. Tex.), *aff'd*, 809 F.3d 134 (5th Cir. 2015),
*aff'd*, 579 U.S. 547 (2016) ..................................................13

v

*Thakur v. Trump*,
787 F. Supp. 3d 955 (N.D. Cal. 2025) ...................................................10

*Thomas v. Cnty. of Humboldt*,
124 F.4th 1179 (9th Cir. 2024) ...........................................................22

*Thomas v. Cnty. of Los Angeles*,
978 F.2d 504 (9th Cir. 1992), *amended* (Feb. 12, 1993) ....................................11

*Trump v. Am. Fed'n of Gov't Emps.*,
145 S. Ct. 2635 (2025) ...................................................................34

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) ...................................................................6, 7

*Trump v. Hawaii*,
585 U.S. 667 (2018) .....................................................................20

*United States v. Moser*,
266 U.S. 236 (1924) .....................................................................19

*United States v. Stauffer Chem. Co.*,
464 U.S. 165 (1984) .....................................................................19

*Uzuegbunam v. Preczewski*,
592 U.S. 279 (2021) ..................................................................19, 20

*V.O.S. Selections, Inc. v. Trump*,
149 F.4th 1312 (Fed. Cir. 2025) .................................................4, 8, 9, 35

*V.O.S. Selections, Inc. v. United States*,
772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025) .............................................4, 9, 35

*W. Va. State Bd. of Educ. v. Barnette*,
319 U.S. 624 (1943) ......................................................................4

*Wash. Env't Council v. Bellon*,
732 F.3d 1131 (9th Cir. 2013) ...........................................................17

*Washington v. Trump*,
145 F.4th 1013 (9th Cir. 2025) ............................................................3

*Washington v. U.S. Dep't of Educ.*,
  No. 26-510, 2026 WL 508485 (9th Cir. Feb. 24, 2026) ......................................13

*Washington v. U.S. Dep't of Educ.*,
  No. C25-1228-KKE, 2025 WL 3690779 (W.D. Wash. Dec. 19, 2025) ..............13

*Webster v. Doe*,
  486 U.S. 592 (1988) ........................................................................................28

*Youngstown Sheet & Tube Co. v. Sawyer*,
  103 F. Supp. 569 (D.D.C. 1952)......................................................................13

*Youngstown Sheet & Tube Co. v. Sawyer*,
  343 U.S. 579 (1952) ...................................................................................13, 32

*Zubik v. Burwell*,
  578 U.S. 901 (2016) ........................................................................................10

**Constitutional Provisions**

U.S. Const. amend. V ..............................................................................passim

**Statutes**

15 U.S.C. § 2931 ....................................................................................................33

15 U.S.C. § 2933 ..............................................................................................10, 33

15 U.S.C. § 2936 ..............................................................................................10, 33

28 U.S.C. § 1291 ....................................................................................................12

28 U.S.C. § 1292(a)(1) ...........................................................................................12

28 U.S.C. § 2201(a)................................................................................................16

50 U.S.C. § 1601 ....................................................................................................33

Pub. L. 119-21, H.R. 1............................................................................................33

**Rules**

Fed. R. App. P. 8....................................................................................................12

Fed. R. Civ. P. 60(b) ..............................................................................................12

Fed. R. Civ. P. 65 ..............................................................................................11

Fed. R. Civ. P. Title VIII ..................................................................................11

**Other Authorities**

*Bolling v. Sharpe*,
    No. 52-4, Br. for Resp'ts, 1952 WL 47258 (U.S. Dec. 1952) ..............................6

*Bolling v. Sharpe*,
    No. 52-413, Oral Argument (U.S. Dec. 10, 1952)..................................................5

*Bolling v. Sharpe*,
    No. 53-1, Suppl. Br. for United States on Reargument,
    1953 WL 78291 (U.S. Nov. 1953)..........................................................................5

*Brown v. Bd. of Educ.*,
    No. 53-1, Br. for Bd. Educ. Topeka on Questions Propounded by the Ct.,
    1953 WL 78287 (U.S. Nov. 27, 1953)....................................................................5

Exec. Order No. 14154, Unleashing American Energy, 90 Fed. Reg. 8353
    (Jan. 29, 2025) ......................................................................................1, 10, 24

Exec. Order No. 14156, Declaring a National Energy Emergency, 90 Fed. Reg.
    8433 (Jan. 29, 2025) ......................................................................................1, 33

Exec. Order No. 14261, Reinvigorating America's Beautiful Clean Coal
    Industry and Amending Executive Order 14241, 90 Fed. Reg. 15517
    (Apr. 14, 2025) ..........................................................................................1, 19, 27

*Learning Resources, Inc. v. Trump*,
    No. 24-1287, Opening Br. for Resp'ts in No. 24-1287 &
    Pet'rs in No. 25-250 (U.S. Sept. 19, 2025) ............................................................9

*Learning Resources, Inc. v. Trump*,
    No. 24-1287, Reply Br. for Resp'ts in No. 24-1287 &
    Pet'rs in No. 25-250 (U.S. Oct. 30, 2025)..............................................................4

Proclamation 11012, 91 Fed. Reg. 9339 (Feb. 25, 2026)......................................18

**INTRODUCTION**

"To demonstrate standing, plaintiffs must answer a basic question—'What's it to you?'" *Diamond Alt. Energy, LLC v. Env't Prot. Agency*, 606 U.S. 100, 110 (2025) (internal quotations and citation omitted). Remember, Plaintiffs are children and youth. They have presented "overwhelming" evidence in this case that their lives, health, and safety are harmed because the Challenged Executive Orders ("EOs") are designed and being implemented to unleash on them fossil fuels, block renewable energy that decreases their pollution exposure, and suppress climate change science on which they depend for protection. Defendants insist they have unfettered authority to implement national energy policy unconstrained by the Constitution. While Congress certainly delegates the Executive some discretionary authority over energy policy, it is not unlimited; it is constrained by the express language of the Constitution and the plain language of statutes. *See Davis v. Passman*, 442 U.S. 228, 241-42 (1979) (quoting Madison describing courts as "guardians" "to resist every encroachment upon rights"). *Juliana v. United States* does not hold otherwise. 947 F.3d 1159 (9th Cir. 2020).

Defendants admit the Plaintiffs have suffered concrete injuries, Answer 14, 24, yet ask this Court to adopt a traceability analysis at odds with recent Supreme Court precedent. Defendants' redressability arguments hinge on this Court constructing barriers to standing that the Supreme Court has already said do not

1

exist. Finally, Defendants ask this Court to jump ahead to the merits and decide legal claims the Plaintiffs do not bring. The district court's decision should be reversed and remanded.

## ARGUMENT

### I. Plaintiffs' Injuries Are Redressable

Defendants never grapple with the multitude of differences between this case and *Juliana*, *see* Opening 3, 13-16, 19-20, 34, 37, 45, 51, reiterating instead that "the relief requested here is equally exceptional" as in *Juliana*. Answer 52, 26, 30, 34, 42, 51, 63. Declaring three recently-signed EOs and implementation thereof unconstitutional is not jurisdictionally equivalent to a declaration as to "a host of federal policies, from subsidies to drilling permits, spanning 'over 50 years,'" some of which occurred before the plaintiffs were born. *Juliana*, 947 F.3d at 1169. Similarly, the "requested remedial plan" requiring court supervision "for many decades" in *Juliana* is legally distinct in character and form as a mandatory injunction from the prohibitory injunctive relief requested here. *Id.* at 1171-72. Defendants propose that government conduct can automatically be insulated from constitutional challenge simply by calling it "policy," an argument no other court has endorsed, and a position that would preclude judicial review of many constitutional cases, including the cases challenging the "Birthright Citizenship" and "Tariff" EOs, which also state this administration's "policy." Answer 1-6, 9, 15, 25-

2

26, 30, 34-44, 48, 51, 67; *Washington v. Trump*, 145 F.4th 1013, 1037 (9th Cir. 2025); *Learning Resources, Inc. v. Trump*, 146 S. Ct. 628, 638 (2026). This Court should reject Defendants' invitation to insulate unconstitutional executive orders from constitutional review.

### A. The Court Has the Power to Award the Requested Relief

Issuing relief in this case will not require any court to set energy policy. *Contra* Answer 34-44, 48; Intervenors 14. The court would declare the constitutional limits on the specific energy directives challenged under strict scrutiny or ultra vires review. Even where Defendants have statutory discretion to direct specific energy policy, "not all matters of discretion are unreviewable." *Pacito v. Trump*, No. 25-1313, 2026 WL 620449, at \*22 (9th Cir. Mar. 5, 2026). The flaw in Defendants' argument comes from their insistence that the Court presume their Orders—ostensibly "policy choices"—fall within statutory and constitutional bounds. However, "[w]hen determining the extent of the district court's remedial power for purposes of redressability, [this Court] 'assume[s] that [the] plaintiff's claim has legal merit.'" *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018) (quoting *Bonnichsen v. United State*s, 367 F.3d 864, 873 (9th Cir. 2004)). Here, assuming Plaintiffs' constitutional and ultra vires claims have merit, "the executive branch has no discretion with which to violate constitutional rights" because unconstitutional conduct lies outside of Defendants' lawful range of discretion. *LaDuke v. Nelson*,

762 F.2d 1318, 1325 (9th Cir. 1985), *amended*, 796 F.2d 309 (9th Cir. 1986). Article III courts are "vested with the ultimate authority to determine the constitutionality of the actions of the other branches of the federal government," even when Congress has delegated the executive branch authority on a subject matter. *Id.*; *see also Marbury v. Madison*, 5 U.S. 137 (1803). "The very purpose of a Bill of Rights was to withdraw" policy discretion in areas intruding on fundamental rights because "[o]ne's right to life . . . may not be submitted to vote; they depend on the outcome of no elections." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 638 (1943).

The Supreme Court recently rejected the Government's same "policy discretion" reasoning in *Learning Resources*, 146 S. Ct. at 646. There, the Supreme Court upheld the Federal Circuit's determination that five EOs imposing tariffs on a broad range of goods due to a "national emergency" declared under the International Emergency Economic Powers Act ("IEEPA"), were ultra vires. *Id.*, *aff'g*, *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1330 (Fed. Cir. 2025) (en banc), *aff'g*, 772 F. Supp. 3d 1350, 1368 (Ct. Int'l Trade 2025). There, as here, the Government argued that the challenge to the EOs was "just a policy disagreement" in an arena left to the Executive's discretion. No. 24-1287, Reply Br. for Resp'ts in No. 24-1287 & Pet'rs in No. 25-250, at 16 (U.S. Oct. 30, 2025). Rejecting that argument, Chief Justice Roberts explained: "We claim no special competence in matters of economics or foreign affairs. We claim only, as we must, the limited role assigned to us by Article

4

III of the Constitution. Fulfilling that role, we hold that IEEPA does not authorize the President to impose tariffs." *Learning Resources*, 146 S. Ct. at 646. The same role is asked of the courts here—to decide whether the Fifth Amendment or the plain language of any statute authorizes the President's EO directives to Defendants to unleash fossil fuel energy. Defendants' theory—that Plaintiffs lack standing because Article III courts lack power to award any relief that curbs the Executive's free rein to engage in unconstitutional conduct—is contrary to *Learning Resources*. *Id.*

*Bolling v. Sharpe* and its companion cases further illustrate the fallacy of Defendants' position. 347 U.S. 497 (1954). There, the sole question was whether the District of Columbia had "the statutory or constitutional power" to segregate schools by race. *Bolling v. Sharpe*, No. 52-413, Oral Argument (U.S. Dec. 10, 1952).[1] At the time, race relations were a heated political issue, and segregation of public schools by race was a policy that government frequently chose, asserting competing social, political, and economic forces.[2] The Supreme Court unanimously rejected the Government's argument that "[t]he policy or wisdom of the maintenance of a dual

---

[1] https://lonedissent.org/transcripts/pre-1955/brown1/bolling-v-sharpe#wednesday-december-10-1952 (last visited Mar. 19, 2026).

[2] *Bolling v. Sharpe*, No. 53-1, Suppl. Br. for United States on Reargument, 1953 WL 78291, at *90, *93, *95, *107, *144, *146 (U.S. Nov. 1953); *compare Brown v. Bd. of Educ.*, No. 53-1, Br. for Bd. Educ. Topeka on Questions Propounded by the Ct., 1953 WL 78287, at *4 (U.S. Nov. 27, 1953) ("The Board has discussed its policy and plans in open, public meetings attended by members of both white and negro races. It has invited and secured cooperation and suggestions . . . .") *with* Answer 40.

school system is beyond the power of courts to even consider," by declaring that the Fifth Amendment prohibited the District of Columbia from segregating schools based on race, and ordering further proceedings "on question of appropriate decree." *Bolling v. Sharpe*, No. 52-4, Br. for Resp'ts, 1952 WL 47258, at *7 (U.S. Dec. 1952); *Bolling*, 347 U.S. at 500. The declaratory and injunctive relief in *Bolling* and *Brown* was within the Court's power to award because it constrained policy discretion by taking "separate-but-equal" directives off the table as contrary to the Constitution. *Brown v. Bd. of Educ.*, 347 U.S. 483, 495 (1954). The Court had power to issue relief notwithstanding Congressional or District of Columbia School Board policy choices because the Fifth Amendment prohibited the specific choice that Defendants made— i.e., exactly what the Court must assume here in its Article III redressability inquiry (*see supra*, p.3). *Bolling*, 347 U.S. at 500; *see also* Opening 36-37.

*Trump v. CASA* is similarly compatible with the relief requested here. 606 U.S. 831, 835 (2025); *contra* Answer 16, 35. *CASA* held that courts may issue injunctions that are no "broader than necessary to provide complete relief to each plaintiff with standing to sue." 606 U.S. at 861. Such injunctions may "benefit" or "advantage" non-plaintiffs in situations where, like here, the benefit is the inseparable consequence of providing relief to the plaintiffs. *Id.* at 851-52. "[A]n archetypal case" of an acceptable injunction that happens to also benefit non-plaintiffs is "a nuisance in which one neighbor sues another for blasting loud music at all hours of

6

the night. . . . That order will necessarily benefit the defendant's surrounding neighbors too; there is no way to peel off just the portion of the nuisance that harmed the plaintiff." *Id.* (citation modified). Plaintiffs here seek only relief for their own injuries, irrespective of whether such relief will also unavoidably benefit non-parties. *CASA* explicitly endorses such injunctions, and "this court has already considered, and rejected, arguments to the contrary." *Epic Games, Inc. v. Apple Inc.*, 161 F.4th 1162, 1192 (9th Cir. 2025).

### B.    The Relief Requested is Workable

Defendants' defense of the district court's error of basing its redressability conclusion on the broadest conceivable injunction—one turning back the clock to lock in the previous administration's policies—ignores the Supreme Court's and this Court's precedents. Answer 41, 48. The redressability analysis must start with Plaintiffs' requested remedies (*see* 6-ER-1338), and if those remedies fail the analysis, the Court must attempt to fashion a remedy within its equitable power that would redress the injury. *Kirola v. City & Cnty. of San Francisco*, 860 F.3d 1164, 1175-76 (9th Cir. 2017); *Day v. Henry*, 152 F.4th 961, 968 (9th Cir. 2025); *Shulman v. Kaplan*, 58 F.4th 404, 409 (9th Cir. 2023); Opening 49, 54-57. A plaintiff "does not lose standing because she proposed an injunction that the district court thought" too narrow or broad. *Kirola*, 860 F.3d at 1176.

7

Plaintiffs established the relief requested in their Complaint is workable, Opening 48-57, and satisfies redressability, Opening 20-47. As they have in other litigation, like *Learning Resources*, Defendants balk at the number of hypothetical "discrete actions" that would be impacted by the traditional relief sought in the Complaint. Answer 49-50. It is common for a single case's requested relief against EOs to require logistically-complicated unwinding. *See* Opening 49-50 (citing cases). As recently as last month, the Supreme Court affirmed a declaratory judgment invalidating five EOs concerning tariffs despite the logistical difficulties and implications the relief would entail. *Learning Resources*, 146 S. Ct. at 646, *aff'g*, *V.O.S. Selections*, 149 F.4th at 1340; 146 S. Ct. at 691 (Kavanaugh, J., dissenting) ("refund[ing] billions of dollars to importers who paid the IEEPA tariffs . . . is likely to be a 'mess'" and "[t]he Court's decision could generate uncertainty regarding" the "trade deals worth trillions of dollars" that the tariffs helped facilitate). Echoing Defendants' arguments here, the Government warned the Court in *Learning Resources* that "[s]uddenly revoking the President's tariff authority under IEEPA . . . would have catastrophic consequences for our national security, foreign policy, and economy," would upend ongoing "trade negotiations [that] have been one of the country's top foreign policy priorities," and "invite judges to impose their own policy preferences" on the issue of tariffs. *Compare Learning Resources v. Trump*, No. 24-1287, Opening Br. for Resp'ts in No. 24-1287 & Pet'rs in No. 25-250, at 3,

8

10, 23 (U.S. Sept. 19, 2025) *with* Answer at 36-37, 48. Those staggering logistical and policy consequences of declaratory judgment did not deprive Article III courts of their power to award declaratory relief.[3] On the contrary, those plaintiffs have standing despite the complicated remedy. *V.O.S. Selections*, 772 F. Supp. 3d at 1368, *aff'd in part*, 149 F.4th 1312, *aff'd sub nom. Learning Resources*, 146 S. Ct. 628. So too here. This Court should similarly reject Defendants' invitation to allow complexity of relief or an imagined parade-of-horribles to preclude standing. The Supreme Court just rejected the Executive's position and affirmed that Article III courts have the power to declare EOs unconstitutional or ultra vires and grant relief, no matter how complex. *See* 146 S. Ct. 628.

*Learning Resources* should end the inquiry. However, this Court's recent precedents in *Day*, *Shulman*, and *Kirola* support a ruling that "the district court was capable of granting at least some relief. For example, the district court could have" analyzed specific injunctions tied to particular sections of the EOs that addressed, e.g., Claim 4 (ultra vires cancellation of the National Climate Assessment ("NCA")). *Day*, 152 F.4th at 968. A declaration or injunction ordering Defendants to reconstitute the United States Global Change Research Program ("USGCRP") and

---

[3] Post-*Learning Resources*, the Government asserted technological impossibility of complying with the trial court's order to refund tariffs. Nonetheless, the court did not alter the Government's obligation to issue refunds. *See Atmus Filtration, Inc. v. United States*, No. 26-01259, 2026 WL 661636 (Ct. Int'l Trade Mar. 6, 2026).

resume work on the NCA as required by statute, to ensure that Plaintiffs like Delaney retain access to the science necessary for their protection, education, and professional development, is well within the court's equitable authority. 6-ER-1298–1301, 6-ER-1330–31; 15 U.S.C. §§ 2933, 2936. Even Defendants obliquely acknowledge that tailoring relief for Claim 4 may redress Plaintiffs' informational injuries. *See* Answer 67. Similarly, the court could have analyzed tailored relief invalidating EO 14154, section 7(a)'s directive that EPA "immediately pause the disbursement of funds appropriated through . . . the Infrastructure Investment and Jobs Act" ("IIJA"), including the IIJA-funded Clean School Bus program Plaintiff J.M. needs to limit her exposure to injurious air pollution. *See, e.g.*, 6-ER-1258, 6-ER-1274, 6-ER-1235, 5-ER-1000, 6-ER-1268; Opening 48, 54-55; *see Thakur v. Trump*, 787 F. Supp. 3d 955, 1006 (N.D. Cal. 2025) (vacating grant terminations and enjoining enforcement of executive orders terminating grants, restoring the status quo); *Day*, 152 F.4th at 968 (considering non-requested relief for redressability).

These precedents refute Defendants' core criticism that Plaintiffs' requested relief is inherently too broad. *See* Answer 36-42, 45-46. On remand on the merits, if the district court found the requested declaratory relief in the Complaint too broad, it could consider a menu of narrower forms of relief with input from the parties. *See Zubik v. Burwell*, 578 U.S. 901 (2016) (ordering parties to propose and evaluate forms of relief narrower than invalidating the entire challenged provision).

Ultimately, workable remedies—even with messy consequences—must not be ignored in the redressability analysis. *Compare* 6-ER-1330 *with* 1-ER-29–32.

Intervenors posit—without citing authority—that, once a federal court awards a declaratory judgment or an injunction, "pre-clearance review" kicks in, barring defendants from pursuing policies "without running them by the district court." Intervenors 11.[4] Intervenors argue that this hypothetical "pre-clearance review" renders any relief in this case overly intrusive. *Id.* 10-12. But preclearance review is not a real procedure applicable here. *See generally*, Fed. R. Civ. P. Title VIII (Provisional and Final Remedies) and Rule 65. District courts may order enjoined parties to *report* on their progress complying with an injunction, but a progress report is nothing like preclearance review, and "[a]ny reporting provision" must be "tailored to fit within the scope of the litigation and must further an appropriate injunctive remedy." *See Thomas v. Cnty. of Los Angeles*, 978 F.2d 504, 510 (9th Cir. 1992), *amended* (Feb. 12, 1993). Absent an order requiring Defendants to report on their progress complying with an injunction, Plaintiffs—not the court—are responsible for monitoring Defendants' compliance. Opening 51; *see, e.g.*, *New York v. Trump*, 777 F. Supp. 3d 112, 118-20 (D.R.I. 2025).

---

[4] Intervenors may be confusing this case with *Juliana*, where "[t]he crux of the plaintiffs' requested remedy" included appointment of a special master to oversee a government remedial plan to undo 50 years' worth of emissions. 947 F.3d at 1170. As Plaintiffs' Opening Brief made clear, and Defendants do not rebut, this case is not *Juliana*. Opening 15.

11

If the court issued an injunction that Defendants find unworkable, a form of speculation that takes us far outside of what is required to establish redressability at this stage, Defendants have procedures available to them to petition the district court (or this Court) to modify, clarify, interpret, stay, or dissolve any injunction, none of which denies Plaintiffs their standing. *See* Opening 52-53; Fed. R. Civ. P. 60(b); 28 U.S.C. §§ 1291, 1292(a)(1); Fed. R. App. P. 8. Defendants use those procedures routinely in other cases and have not contested Plaintiffs' point that those procedures are "a solution" to the hypothetical problem they imagine here. *See, e.g.*, *Am. Fed'n of State Cnty. & Mun. Emps., AFL-CIO v. U.S. Off. of Mgmt. & Budget*, No. 25-CV-08302-SI, 2025 WL 3654116, at *4 (N.D. Cal. Dec. 17, 2025) (government requested clarification whether injunction applied retrospectively); *City & Cnty. of San Francisco v. U.S. Dep't of Just.*, No. 25-CV-09277-JD, 2026 WL 177945, at *9 (N.D. Cal. Jan. 21, 2026) ("Either side may request a modification of the injunction as circumstances warrant."); *compare* Opening 53 *with* Intervenors 2, 6, 13, 15, 19 (ignoring Plaintiffs' argument on this point).

Contrary to Intervenors' contention that Plaintiffs seek "unprecedented" relief (at 2, 5, 20), just like in *Learning Resources,* courts grant comparable relief against unlawful EOs, memoranda, or directives, despite the same government protestations that such relief exceeds judicial power. *Compare* 6-ER-1338 *with* Opening 53-54; 146 S. Ct. at 646; *Washington v. U.S. Dep't of Educ.*, No. C25-1228-KKE, 2025 WL

12

3690779, at *17-18 (W.D. Wash. Dec. 19, 2025) (vacating and permanently enjoining implementation of Executive "Directive procedure, discontinuation notices, and letters" "through any means"), *stay of injunction denied*, No. 26-510, 2026 WL 508485 (9th Cir. Feb. 24, 2026); *Texas v. United States*, 86 F. Supp. 3d 591, 677-78 (S.D. Tex.) (enjoining the Presidential Deferred Action for Parents of Americans Memorandum), *aff'd*, 809 F.3d 134 (5th Cir. 2015), *aff'd*, 579 U.S. 547, 548 (2016); *Youngstown Sheet & Tube Co. v. Sawyer*, 103 F. Supp. 569, 577 (D.D.C.) ("[P]reliminary injunctions restraining defendant from acting under the purported authority of Executive Order 10340 should be issued[.]"), *aff'd*, 343 U.S. 579 (1952); *Panama Ref. Co. v. Ryan*, 293 U.S. 388, 433 (1935) ("[T]he Executive Orders of July 11, 1933, and July 14, 1933, Nos. 6199, 6204, and the regulations issued by the Secretary of the Interior thereunder, are without constitutional authority."). It necessarily follows that there is some form of relief here that is within an Article III court's power to grant Plaintiffs for these unlawful EOs.

### C. The Relief Requested Will be Meaningful

A plaintiff need only show "at least partial[] redress." *Meese v. Keene*, 481 U.S. 465, 476 (1987). The Supreme Court recently clarified just how little redress is required. In *Diamond*, fuel producers challenged an EPA vehicle emissions regulation which was "about to sunset" and all parties "agree[d] will soon be moot (and is largely moot already)[.]" 606 U.S. at 132, 129 (Jackson, J., dissenting). The

13

Supreme Court held the producers had standing, even though a judgment vacating the challenged regulation would hardly benefit the producers, if it benefitted them at all, because a plaintiff's burden on redressability is so emphatically small: "Even one dollar of [hypothetical] additional revenue for the fuel producers would satisfy the redressability component of Article III standing." 606 U.S. at 114 (citation modified). The Supreme Court held that likely redress is absent only when granting relief "would actually have zero impact[.]" *Id.* at 123.

Here, the district court correctly applied *Diamond* to conclude that "if one dollar of relief is sufficient, the reduction of 205 million metric tons per year—and, by 2035, 505 million metric tons—of injury-causing greenhouse gas should be, too." 1-ER-28; *contra* Answer 31. Similarly, 0.1ºC of avoided heating is sufficient, Dkt. 25 at 10, as is resuming work on the indefinitely-paused NCA.[5] Opening 46-47. Under *Diamond*, redressability does not require a court to "'solve global climate change,'" as Defendants insist, any more than it required the court to solve *Diamond*'s complete economic losses from electric vehicles displacing internal combustion engine vehicles and lowering fuel sales. *Contra* Answer 11 (quoting *Juliana*), 14, 30. At present, this Court need not decide whether "every ton" of greenhouse gas pollution matters the same way one dollar does, *contra id.* 14, 19-

---

[5] It is baseless to assume that if USGCRP releases the NCA to Congress, no member of Congress will make it public. *Contra* Answer 66-67.

22, 32; Dkt. 76, because this case involves *hundreds of millions* of tons per year, as the district court correctly found based on the facts alleged and the evidence presented. 1-ER-28.

*Diamond* also clarified a plaintiff's evidentiary burden to show likely redress. *Diamond* held that, when a plaintiff's theory of obtaining redress hinges on third parties behaving predictably (rather than counterintuitively), courts cannot require evidence that third parties will behave as predicted. 606 U.S. at 120-21. Instead, plaintiffs need only identify "'a predictable chain of events' that would likely result from judicial relief and redress the plaintiff's injury." *Id.*; *accord Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019). Within that chain, courts should draw "commonsense inferences" that government regulations will have their intended effect, and that removing the regulations will have the opposite effect. *Diamond*, 606 U.S. at 110, 116-18, 120-21. These "commonsense inferences" apply equally here, where the government directs executive conduct that will cause downstream or upstream injuries to others in the chain, like these children. *Id.* at 116; *see, e.g.*, 6-ER-1273–74, 6-ER-1280–81, 6-ER-1285–87, 6-ER-1225–26. Such an inference is warranted here for the same reason as in *Diamond*: "[t]he whole point of the [challenged measures] is to increase" or decrease the production and combustion of fossil fuels for energy. *Id.* at 114, 118; 6-ER-1257–61. *Diamond* admonished that "[t]o deny standing based on a theory that invalidating an important regulation would

15

actually have zero impact on a dynamic and heavily regulated market requires a degree of economic and political clairvoyance that is difficult for a court to maintain." *Id.* at 123. Because *Diamond*'s commonsense-inference holdings apply to both redressability and traceability, Defendants' redressability and traceability arguments regarding third-party conduct fail. *Id.* at 114, 116; Answer 14, 26, 28.

*Diamond* also confirmed that the relief sought here is sufficient to provide redress. Answer 52. The sole relief in *Diamond* was a judgment vacating the challenged agency decision, and redressability was satisfied. 606 U.S. at 109. *Diamond* is consistent with the Declaratory Judgment Act, which authorizes "any court of the United States . . . [to] declare the rights and other legal relations of any interested party seeking such declaration, *whether or not further relief is or could be sought*." 28 U.S.C. § 2201(a) (emphasis added). The Act does not require "further court action" beyond declaratory relief, nor does redressability, as *Diamond* made clear. *Contra* Answer 56 (quoting *Juliana*).

Defendants' sole counter—that *Diamond* "said nothing about whether the relief requested was itself beyond Article III power"—misfires, as the district court relied on *Diamond* for redressability's likelihood-of-redress prong, not the Court's-power-to-award prong. Answer 61; 1-ER-28; Opening 10, 12, 27, 33, 35. Although Defendants largely ignore *Diamond* and rely heavily on *Juliana* and *Bellon*, the Supreme Court decided *Diamond* years after those cases. *Wash. Env't Council v.*

16

*Bellon*, 732 F.3d 1131 (9th Cir. 2013). To the extent any of *Diamond*'s "reasoning or theory" conflicts with that of *Juliana* or *Bellon*, *Diamond* controls. *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003).

Defendants' attack on *Massachusetts v. EPA* is a red herring. Answer 19-20, 28-33 (citing 549 U.S. 497 (2007)). Plaintiffs' standing does not depend on *Massachusetts*, which was not about injuries to children's fundamental constitutional rights, and because other Supreme Court precedent confirms that reducing the risk of harm suffices for redressability. Opening 23. The district court expressly rejected *Massachusetts*' relaxed redressability standard, basing its likely-redress conclusion instead on expert testimony about the quantity of emissions at issue here. Opening 22-23; 1-ER-22–23.

Defendants also ignore relevant distinctions between ultra vires and fundamental rights claims. *Compare, e.g.*, Answer 53, 63 *with* Opening 33-47. For Plaintiffs' ultra vires claims, it is irrelevant whether Defendants respond to a judgment by "later, in the exercise of [their] lawful discretion, reach[ing] the same result for a different reason," as Defendants hypothesize will happen here. *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 25 (1998); *contra* Answer 53. For example, in *Learning Resources*, the Supreme Court affirmed a declaration that five tariff EOs were ultra vires in spite of the dissent's speculation that "numerous other federal statutes authorize[d] the President to impose tariffs and might justify most (if not all)

of the tariffs at issue" there. 146 S. Ct. at 691 (Kavanaugh, J., dissenting). As predicted, hours later, the President issued similar tariffs under a different statute. *See* Proclamation 11012, 91 Fed. Reg. 9339 (Feb. 25, 2026). Just as the President's post-judgment action did not deprive the *Learning Resources/V.O.S.* plaintiffs of standing to bring their ultra vires claims or pursue relief, the Executive's efforts to unleash fossil fuels by other means on another day do not deprive Plaintiffs of standing today. *See also* Opening 56-57 (citing cases); *Gutierrez v. Saenz*, 606 U.S. 305, 319-20 (2025) (defendant's declaration that he will behave no differently after a declaratory judgment does not defeat redressability); *Diamond*, 606 U.S. at 121 (requiring plaintiff to prove others will change behavior after a judicial declaration "would render the plaintiff's ability to obtain judicial review dependent on the happenstance of whether the plaintiff and" the others "are aligned and share litigation interests").

For Plaintiffs' Fifth Amendment claims, it is entirely irrelevant whether the conduct directed by the EOs is authorized by Congress now or in the future. *Contra* Answer 30, 39. In a fundamental rights claim, government conduct is unlawful not due to lack of delegated authority, but because the government *never* has discretion to violate fundamental rights without satisfying the appropriate level of scrutiny. *LaDuke*, 762 F.2d at 1325. Consequently, Plaintiffs' Fifth Amendment claims cannot be defeated by identifying a statute authorizing the challenged conduct, now or later.

18

Instead, if the district court below were to declare, for example, that portions of EO 14261 unlawfully burdens Plaintiffs' right to life, and Defendants responded by continuing to use the power of the Executive branch to "prioritize" and "reinvigorate coal" pursuant to a different legal authority, Plaintiffs could rely on the judgment as precedent in a subsequent lawsuit challenging the Defendants' conduct. *See United States v. Moser*, 266 U.S. 236, 242 (1924) (res judicata prevents federal government defendants from relitigating a "*fact, question or right* distinctly adjudged in the original action"); *United States v. Stauffer Chem. Co.*, 464 U.S. 165, 174 (1984). Defendants' post-judgment conduct is thus immaterial to the district court's power to provide redress. Opening 27-28, 56. Because a declaratory judgment in Plaintiffs' favor would make "additional relief [] available" in a "future" lawsuit, this case satisfies even Defendants' lawsuit-preclusive theory of declaratory judgments. Answer 58-59.

Plaintiffs' redress comes from the court's "exercise of its power," not "the awe-inspiring effect of [its] opinions" because Plaintiffs here, unlike the plaintiffs in *Brackeen*, have sued the correct defendants. *Haaland v. Brackeen*, 599 U.S. 255, 294 (2023); Answer 53-54, 62. Defendants' argument regarding *Uzuegbunam* is unpersuasive because the Supreme Court has expressly equated *Uzuegbunam*'s nominal damages to declaratory judgment, as this Court has acknowledged. *See*

19

*Uzuegbunam v. Preczewski,* 592 U.S. 279, 285-86 (2021); *Diamond*, 606 U.S. at 114; *Platt v. Moore*, 15 F.4th 895, 902 (9th Cir. 2021).

Contradicting their position that the EOs are of such monumental import that enjoining them would constitute a judicial takeover of energy policy, Answer 38, Defendants' theorize that EOs lack legal and practical force ("are not laws in the ordinary sense") and are merely "the President's policies as expressed in executive orders," rendering a declaratory judgment invalidating them meaningless and incapable of providing redress. Answer 33, 54-55. That theory is foreclosed by *Learning Resources* (which Defendants entirely ignore), longstanding judicial precedent that EOs are subject to judicial review, as well as *Diamond*'s commonsense inference that government policies have their intended effect on fossil fuel consumption. *Diamond*, 606 U.S. at 117. Even absent a commonsense inference, Plaintiffs' expert John Podesta testified that EOs have practical and legal force. *See* 2-ER-194–201, *accord Trump v. Hawaii*, 585 U.S. 667, 698 (2018) (holding individuals had standing to challenge a presidential proclamation due to the proclamation's "real-world effect" on them); *see* Dkt. 28. Defendants cite no cases to the contrary, instead citing authority for the unremarkable proposition that presidents *may* issue EOs, a straw man not at issue here. Answer 54 (citing *Myers v. United States*, 272 U.S. 52, 135 (1926)); *Bldg. & Const. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28, 32 (D.C. Cir. 2002). EOs are reviewable like any other

20

injurious government conduct.[6] *See* Opening 32 (citing cases); *Learning Resources*, 146 S. Ct. 628.

In short, the district court has many ways to provide meaningful redress to Youth Plaintiffs. An injunction or declaration regarding Claims 1-3 and 6, concerning Plaintiffs' greenhouse-gas and coal dust injuries, would avoid the emission of hundreds of millions of tons of greenhouse gases every year, avoid an additional 0.1°C of heating, and reduce Plaintiffs' exposure to coal dust. *See* Dkt. 25 at 10. An injunction or declaration regarding Claims 4 and 5 would restart work on the NCA and restore other vital climate science and congressionally-mandated agency programs, redressing Plaintiffs' relevant informational, educational, and job-related injuries. A declaratory judgment as to any of Plaintiffs' fundamental rights claims (1-2, 6) would, at minimum, have a preclusive effect in a future lawsuit. *See also* Opening 25-28, 34-36, 44-47. Plaintiffs have satisfied redressability.

## II. Plaintiffs Have Satisfied Injury and Traceability

The district court correctly determined that greenhouse gas emissions from fossil fuels cause Plaintiffs' particularized and cognizable injuries-in-fact, and that

---

[6] Defendants cite no supporting cases for the hypothetical that if the EO was issued orally it would be unreviewable, because none exists, and it is irrelevant. Answer 38; *see also* 2-ER-194–201 (expert Podesta's testimony).

the challenged EOs will worsen these injuries.[7] 1-ER-15–17. Defendants admit that Plaintiffs have demonstrated concrete injuries here. Answer 14, 24. Although a 12(b)(1) motion is ordinarily resolved on the four corners of the complaint, and despite Defendants' admission, Defendants' brief ignores the Complaint's allegations as to the personal nature of Plaintiffs' injuries, which at this stage must be taken as true and construed "in favor of the complaining party." *Thomas v. Cnty. of Humboldt*, 124 F.4th 1179, 1186 (9th Cir. 2024); 6-ER-1214–1339. The district court arrived at its conclusion after reviewing hundreds of pages of declarations and after a two-day hearing of plaintiff and expert testimony. *See generally* ER Vols. 2-5; 6-ER-1340–1391. Defendants' and Intervenors' able counsel called no witnesses. Defendants now, on appeal, seek to make an end-run around that evidence by disparaging it as "hypothetical and conjectural." *See, e.g.*, Answer 21. But the evidence was the opposite: "overwhelming." 1-ER-13. Plaintiffs have shown injury and traceability.

### A.   The District Court Correctly Determined that Plaintiffs Suffer Cognizable Injuries-in-Fact

Plaintiffs agree injuries must be "particularized to each plaintiff." Answer 20. The Complaint identified the individually-specific harms each Plaintiff suffers from local, acute impacts from climate change, fossil fuel pollution, and coal dust, as well

---

[7] Below, Intervenors did not challenge whether Plaintiffs suffered an injury-in-fact, and do not raise the issue here on appeal. *See* Doc. 48 at 5 n.1.

as from individually-specific informational injuries, and the Complaint explained how the Challenged EOs increase and exacerbate those harms. 6-ER-1224–49; 6-ER-1267, 6-ER-1278, 6-ER-1304–07; 4-ER-703–04; 4-ER-706–07; 4-ER-763; 4-ER-892–93; 4-ER-895–98.

Plaintiffs' increased risk of individual harms related to personally-specific climate change injuries include economic losses that exceed one dollar, injuries to recreational and aesthetic interests, mental and psychological harm, and hospitalizations from extreme heat and breathing air polluted by climate-induced wildfire smoke that increases the risk of respiratory and other ailments. *Id.*; 4-ER-848–50, 5-ER-966–69; 6-ER-1340. Plaintiffs' experts tied Plaintiffs' existing injuries and increased risk of harm from the worsening of those injuries to the predictable and quantifiable increase of GHG emissions caused by the Challenged EOs—including localized pollution impacts. *See generally* 3-ER-580–601 (EO implementation & federal climate policy expert); 5-ER-1002–50, 4-ER-810–27, 5-ER-972–82 (agency fact witnesses); 5-ER-983–94, 4-ER-670–76, 4-ER-870–80, 4-ER-659–69, 4-ER-784–809, 4-ER-643–58 (greenhouse gas emission & energy quantification experts); 5-ER-1075–1143, 4-ER-828–42 (climate change experts); 3-ER-602–27 (renewable energy fact witness); 4-ER-773–83, 5-ER-941–64 (economic experts); 4-ER-911–31 (climate information expert); 4-ER-713–60, 4-ER-857–69, 5-ER-1051–74 (medical experts); 6-ER-1341–82. Based on this

23

evidence, the district court concluded that "Plaintiffs convincingly allege [the Challenged EOs] will expose them to imminent, increased harm from a warming climate." 1-ER-19.

Plaintiffs' injuries included Avery and J.M.'s likelihood to suffer additional economic harms from increased emissions that exacerbate the severity of hurricanes and floods in areas where they live and learn. *See* 6-ER-1245, 6-ER-1269, 6-ER-1275, 6-ER-1301–02; 4-ER-848–50; 6-ER-1235; 6-ER-1271. Montana Plaintiffs will face rising energy costs as a result of the EOs. 6-ER-1265; 3-ER-370, 3-ER-420–21, 3-ER-424, 3-ER-426–31, 3-ER-626–31. Present and imminent economic harms stemming from the predictable downstream effects of government policies "are of course an injury" for standing purposes. *Diamond*, 606 U.S. at 114.

As the district court correctly noted, Plaintiffs attested "to a broad range of personal injuries," including injuries separate and apart from climate change, but directly resulting from reinvigorating coal, canceling funding for electric vehicles, and unleashing more fossil fuels. 1-ER-15; *contra* Answer 23. Montana Plaintiffs will breathe increased amounts of toxic coal dust from the Administration's extension of coal production at the Spring Creek Mine under EO 14154. 1-ER-16. J.M. will breathe air polluted by her school bus's continued burning of diesel fuel that was set to be replaced under a program halted by the EOs. 6-ER-1235–36; 6-ER-1268; 5-ER-1000; 5-ER-1151; 6-ER-1258. Breathing polluted air is a cognizable

24

injury, as are informational injuries. *Helling v. McKinney*, 509 U.S. 25, 27-28, 31 (1993); *Akins*, 524 U.S. 11.

Plaintiffs also allege informational injuries tied to their ultra vires claims. *See, e.g.*, 6-ER-1233, 6-ER-1244; *see also* 1-ER-15 (citing Doc. 25-1 ¶¶ 4, 7 (4-ER-700–01, 4-ER-703)); 6-ER-1224–26, 6-ER-1229, 6-ER-1232–33, 6-ER-1244–49, 6-ER-1278, 6-ER-1299-1300, 6-ER-1304–05, 6-ER-1308; 4-ER-706–07 (NCA is "essential component" of Delaney's PhD studies and her strategies for improving coastal resilience). Informational injuries are cognizable when, as here, a plaintiff is unable to obtain information that a statute requires a government defendant to make public. *Akins*, 524 U.S. at 21.

Because Plaintiffs' injuries are concrete and particularized, they are not generalized grievances. *Contra* Answer 19-21, 70. Generalized grievances are "cases where the harm at issue is not only widely shared, but is also of an abstract and indefinite nature—for example, harm to the 'common concern for obedience to law.'" *Akins*, 524 U.S. at 23. "The victims' injuries from a mass tort, for example, are widely shared, to be sure, but each individual suffers a particularized harm." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 n.7 (2016).

An increased risk of harm to health is also a cognizable injury. 1-ER-18 (citing *Ecological Rts. Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1151 (9th Cir. 2000)); *Helling*, 509 U.S. at 27-28, 33-35; *contra* Answer 20. The scientific facts alleged in

the Complaint and unrefuted by Defendants at the evidentiary hearing must be accepted as true at this stage in the case. Plaintiffs presented "overwhelming evidence that climate change is affecting them now in concrete and personal ways, and that these effects will imminently worsen as a result of the Challenged EOs" that are designed to unleash additional GHGs into the atmosphere. 1-ER-18.

### B. The District Court Correctly Determined that Plaintiffs' Injuries-in-Fact are Fairly Traceable to the Challenged Executive Orders

Traceability "requires only that the plaintiff's injury be fairly traceable to the defendant's conduct[,]" a lower standard than proximate causation. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014); *contra* Answer 24. This case does not require a court to speculate whether agency actions implementing the EOs will or will not cause GHG emissions to increase. *Contra* Answer 15, 26. Plaintiffs' experts have established they will, and the district court credited their testimony. 1-ER-14–20, 1-ER-22–23. The links in this "causation chain" are not "hypothetical or tenuous," but rather based on credible scientific evidence and testimony that Defendants did not even attempt to rebut. *See Idaho Conservation League v. Bonneville Power Admin.*, 83 F.4th 1182, 1188 (9th Cir.

26

2023) (a "causation chain does not fail solely because there are several links," provided those links "are not hypothetical or tenuous and remain plausible").[8]

Here, the "whole point" of the EOs is to "unleash" fossil fuels. *See, e.g.*, EO 14261. The EOs are having the predictable effect of causing third parties—like the Spring Creek Mine and Colstrip Generating Station in Montana—to do *exactly that* by increasing fossil fuel production and releasing the resulting GHG pollution into Montana. 6-ER-1234, 6-ER-1225–26; 6-ER-1285–87; 6-ER-1289; 6-ER-1260–61; 4-ER-741; 4-ER-875–77, 5-ER-990; *see Diamond*, 606 U.S. at 114, 116-18; *see* 2-ER-194–201; Dkt. 28. The Complaint traces the challenged Defendant conduct from the EOs themselves, to how each Defendant agency implemented the EOs in specific ways that give rise to the Plaintiffs' injuries. *See* 6-ER-1257–62 (EOs); 6-ER-1274–75, 6-ER-1278 (Defendant OMB directing implementation); 6-ER-1280–1310 (Defendant agencies' implementation); 6-ER-1224–49, 6-ER-1278, 6-ER-1304–08

---

[8] Defendants' reliance on *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412-13 (2013) doesn't help their case. The issue there was whether U.S. citizens would be subject to surveillance under the Act. *Id.* at 401. The citizens alleged their injuries were traceable due to a likelihood their communications would be intercepted in the future. *Id.* at 410. The Supreme Court held the citizens lacked standing because it was purely speculative whether the government would target their personal communications under the challenged Act, and plaintiffs proffered no evidence on this point. *Id.* at 411. The opposite is true here: Plaintiffs presented evidence quantifying the amount of GHG pollution directly "unleashed" by the EOs and tied that substantial increase to Plaintiffs' increased risk of harm. Defendants' reliance on *Murthy v. Missouri* is misplaced for the same reason. Answer 21, 25, 32-33, 35; 603 U.S. 43 (2024).

27

(Plaintiffs' injuries); *contra* Intervenors 25. Defendants publicly touted the EOs have resulted in crude oil production increasing by 200,000 barrels per day. 4-ER-696. Defendants cannot end-run around Plaintiffs' "overwhelming" evidence by claiming the greenhouse gases from the EOs are unknowable because the EOs are not final agency actions.[9] Answer 25-26. They are predictable and they are working, just as were the tariff EOs in *Learning Resources* that harmed those plaintiffs. The district court correctly found traceability satisfied. 1-ER-23.

## III. Plaintiffs Need Not Proceed Under the APA

Defendants and Intervenors argue incorrectly that the government conduct challenged here is reviewable only under the APA, and that only final agency actions are reviewable, as opposed to the executive orders that put such actions into motion. Answer 36-37, 50-51; Intervenors 19-21. This Court has rejected both arguments. *See Sierra Club v. Trump*, 929 F.3d 670, 694-96 (9th Cir. 2019) (equitable constitutional suits need not proceed under the APA); *Navajo Nation v. Dep't of Interior*, 876 F.3d 1144, 1172 (9th Cir. 2017) (APA's "final agency action" limitation does not apply to non-APA constitutional claims); *Webster v. Doe*, 486 U.S. 592, 603 (1988). Because these doctrines are well established in this Court's precedents, Defendants' attempt to distinguish *Juliana*'s is unpersuasive. 947 F.3d at 1167.

---

[9] Each of Defendants' other traceability arguments should be rejected for the same reasons set forth in the sections on redressability. *Supra* at sec. I.

28

Moreover, EOs are not reviewable under the APA because "the President is not an agency[.]" *Pacito*, 2026 WL 620449, at *23.

## IV. If Standing is Not Properly Alleged, Plaintiffs Should Be Granted Leave to Amend

Defendants argue (at 74-75) that "Plaintiffs propose no 'specific allegations that might rectify'" a conclusion that Plaintiffs lack standing. But that gets the process backward. If this Court concludes Plaintiffs lack standing due to any gap in their allegations, Plaintiffs should be afforded an opportunity to amend based on the gaps identified. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Moreover, if "pertinent facts bearing on the question of jurisdiction are controverted or [] a more satisfactory showing of the facts is necessary," this Court should "remand with instructions to permit [jurisdictional] discovery." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093, 1083 (9th Cir. 2003).

## V. Remand is Warranted and Plaintiffs Have Stated Fifth Amendment and Ultra Vires Claims

Courts "have an obligation to assure [them]selves of litigants' standing under Article III before proceeding to the merits of a case." *Dep't of Educ. v. Brown*, 600 U.S. 551, 560 (2023) (citation modified). Because "[a] district court is usually best positioned to apply the law to the record[,] . . . [a]n appellate court should usually wait for the district court to decide [the merits] in the first instance." *Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*, 946

F.3d 1100, 1111 (9th Cir. 2020); *see also Diamond*, 606 U.S. at 105 (reversing lower court's finding of no redressability and remanding to decide merits); *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738, 754 (9th Cir. 2020) (reversing and remanding for district court to decide merits); *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 576 (9th Cir. 2020) (same). Only "when a question could not possibly be affected by deference to a trial court's factfinding or fact application, or a litigant's further development of the factual record" does this Court exercise its discretion to proceed to the merits. *Planned Parenthood*, 946 F.3d at 1111. A relevant factor is whether the parties have fully briefed the merits before this Court. *Id.* at 1115 n.2; *Skyline Wesleyan Church*, 968 F.3d at 753 (remanding for full merits briefing).

The district court invited this Court to "return . . . this case [to it] to decide it on the merits." 1-ER-34. This Court should accept the invitation because, first, the district court is more familiar with the case's voluminous evidentiary record. Second, the Excerpts of Record are incomplete for purposes of deciding the merits because they do not contain the whole evidentiary record. Third, Defendants' brief raises disputes of material fact that are inappropriate to decide before discovery. *Compare, e.g.*, Answer 70 ("The climate does not implicate personal liberty") *with* 4-ER-902 ("[I]f fossil fuels are emitted this year that would not be emitted otherwise, those emissions *will* increase the heat trapped by our atmosphere, and I *will* be trapped in

30

the increased heat.") *and* 4-ER-854 ("I cannot escape extreme climate events resulting from fossil fuel pollution."). Fourth, there has been virtually no briefing in this Court of the merits, and space does not allow Plaintiffs to rebut all of Defendants' mischaracterizations of their Complaint and the record. *See, e.g.*, Answer 73-74 (ignoring Complaint allegations and record evidence). Fifth, deciding the merits would delay this Court's disposition of the appeal instead of expediting it, despite this Court's partial grant of Plaintiffs' motion to expedite. Dkt. 3; Dkt. 18.

Even so, these Youth Plaintiffs have stated substantive claims. Claims 1 and 2 allege violations of their individual rights to Life and Liberty—rights textually enumerated in the Fifth Amendment and recognized through ample binding precedent. U.S. Const. amend. V; *see also* Opening 33 (citing cases). While not binding precedent, Justice Barrett recently acknowledged the continuing vitality of substantive due process claims. *Mirabelli v. Bonta*, 146 S. Ct. 797, 804 (2026) (Barrett, J., concurring); *see id.* at 803 (per curiam) (upholding preliminary relief under fundamental rights strict scrutiny analysis, stating "children's safety is the overriding equity"). Even executive actions that exercise textually-committed Article II powers or congressionally-delegated Article I powers are still unlawful if they violate fundamental rights. *LaDuke*, 762 F.2d at 1325.

Defendants' sole argument regarding these claims is based on a position Plaintiffs simply do not take. Plaintiffs do not claim an unenumerated *federal* right

31

to a life-sustaining climate system. *Compare* Answer 69-71 *with* 6-ER-1314, 6-ER-1317. Defendants' argument that no such federal right exists is thus wasted ink and irrelevant to the claims in this case.[10]

This Court has emphatically rejected Defendants' argument that ultra vires analyses are rooted in statutes, not the Constitution. Answer 71-72; *Sierra Club*, 929 F.3d at 694-98 (explaining why *Dalton v. Specter*, 511 U.S. 462 (1994) "does not foreclose Plaintiffs' constitutional claim here."); *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952). If the authority is not "found in some provisions of the Constitution," and no "statute [] expressly authorizes the President" to order the act in question, then the act is not "within the constitutional power of the President." *Id.* at 587, 585, 584. As recently as *Learning Resources*, the Supreme Court required the President to identify a clear delegation from Congress in order to exercise Congress's Article I section 8 taxing power via executive order, which did

---

[10] The complaint language Defendants cite (at 69) regarding a "life-sustaining, stable climate system" in fact points to (1) a factual allegation that "*[a]t the time of the Nation's founding, terrestrial existence was predicated on* a life-sustaining, stable climate system" (6-ER-1314, emphasis added)—a factual allegation provable with historical evidence; and (2) description of the EOs' injury to Montana and Hawai'i Plaintiffs' ability to exercise their *state-law* climate rights deriving from "[t]he Montana and Hawai'i Constitutions." 6-ER-1318; *see also* 6-ER-1237–42 (describing the EOs' injury to Montana and Hawai'i Plaintiffs' state-law rights); *PPL Montana, LLC v. Montana*, 565 U.S. 576, 603 (2012) ("[T]he public trust doctrine remains a matter of state law"); *Mills v. Rogers*, 457 U.S. 291, 300 (1982) ("[S]tate-created liberty interests are entitled to the protection of the federal Due Process Clause.").

not exist. 146 S. Ct. at 638, 646. Similarly, here, none of the statutes Defendants identify authorizes the specific conduct challenged in Plaintiffs' fundamental rights or ultra vires claims—and in many cases, forbids that conduct.[11] *See* 6-ER-1319, 6-ER-1330–31. "That the Government may ultimately enjoy wide discretion as to *how* and *with whom* it meets its statutory obligations does not mean it may choose to shirk those obligations in the first instance," *Pacito*, 2026 WL 620449, at *26, or that it may violate the Constitution.

Plaintiffs have stated a claim for a personal security violation of the state-created danger doctrine. *Contra* Answer 73-74. The Liberty Clause includes a "right to be free from and to obtain judicial relief, for unjustified intrusions on personal security." *Ingraham v. Wright*, 430 U.S. 651, 672-73 (1977). Plaintiffs have adequately alleged facts satisfying all elements of the doctrine because they allege Defendants (1) create or expose Plaintiffs to "an actual, particularized danger that [they] would not otherwise have faced"; (2) "the injury [they] suffer[] was

---

[11] 50 U.S.C. § 1601 (cited in Answer 6) does not create any substantive powers exercised in the Emergency EO, but rather, sets a sunset date for emergencies declared before 1977. 15 U.S.C. §§ 2931, 2933, 2936 (Answer 67) require the President to "establish" the USGCRP—the opposite of disbanding it—and to submit an NCA to Congress "not less frequently than every 4 years"; *see* 6-ER-1330. Pub. L. 119-21, H.R. 1, § 60001 (SER-113) rescinds the funding only for the Clean Heavy-Duty Vehicle program, a different program from Plaintiff J.M.'s Clean School Bus program, which was unaffected by Pub. L. 119-21, H.R. 1. Sections 60002, 60013, and 60016 (SER-113) rescinded only the *unobligated* balances of certain funds, which does not affect the allegations in 6-ER-1258, 6-ER-1282–83, which refer to obligated funds.

foreseeable"; and (3) the government actor was "deliberately indifferent to the known danger." *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019); *see* 6-ER-1335–38 (summarizing). Defendants cannot graft additional requirements onto this settled doctrine by citing dissents and concurrences. Answer 73.

## VI.    The EOs' Boilerplate Proviso Does Not Save Them

The EOs' boilerplate proviso that they shall be implemented "consistent with applicable law" does not eliminate standing or judicial review in this case. *Contra* Answer 25, 30, 38, 42. This Court has already rejected Defendants' argument, holding that "the Administration's interpretation would simply lead us into an intellectual cul-de-sac[,] . . . precluding resolution of the critical legal issues." *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1240 (9th Cir. 2018); *Am. Fed'n of Gov't Emps. v. Trump*, 139 F.4th 1020, 1038 (9th Cir. 2025) (holding savings clause did not shield EO from review, which commanded agencies to take specific actions). Defendants' cherry-picked quote from *Trump v. American Federation of Government Employees* is not to the contrary. Answer 38 (citing 145 S. Ct. 2635 (2025) (Sotomayor, J., concurring)); *see City & Cnty. of San Francisco v. Trump*, No. 25-CV-01350-WHO, 2025 WL 2243619, at *4-5 (N.D. Cal. Aug. 5, 2025) (considering the exact quote from DOJ and rejecting its application). This Court need look no further than the five EOs which the Supreme Court declared unlawful in *Learning Resources*, all of which contained savings clauses. *V.O.S. Selections*, 772

F. Supp. at 1368, *aff'd in part*, 149 F.4th at 1340, *aff'd sub nom. Learning Resources*, 146 S. Ct. 628; *see also City & Cnty. of San Francisco*, 897 F.3d at 1239 (affirming judgment that an EO section was unconstitutional notwithstanding a savings clause); *Am. Fed'n of Gov't Emps*, 139 F.4th at 1038 (holding EO 14210 ultra vires notwithstanding savings clause). The EOs' savings clauses do not save them.

## CONCLUSION

For the reasons set forth above, this Court should reverse and remand.

Date: March 19, 2026

/s/ *Julia A. Olson*
Julia A. Olson
Andrea K. Rodgers
Nathan Bellinger
OUR CHILDREN'S TRUST
1216 Lincoln Street
Eugene, OR 97401
(415) 786-4825
julia@ourchildrenstrust.org
andrea@ourchildrenstrust.org
nate@ourchildrenstrust.org

Roger Sullivan
McGARVEY LAW
345 1st Avenue East
Kalispell, MT 59901
(406) 752-5566
rsullivan@mcgarveylaw.com

Philip L. Gregory
GREGORY LAW GROUP
1250 Godetia Drive

35

Redwood City, CA 94062
(650) 278-2957
pgregory@gregorylawgroup.com

Daniel C. Snyder
Haley Nicholson
PUBLIC JUSTICE
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 797-8600
dsnyder@publicjustice.net
hnicholson@publicjustice.net

*Counsel for Plaintiffs-Appellants*

36

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 25-6714

I am the attorney or self-represented party.

**This brief contains** 8339 **words,** including [ ] words

manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

● complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    ☐ it is a joint brief submitted by separately represented parties.
    ☒ a party or parties are filing a single brief in response to multiple briefs.
    ☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [ ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** Julia Olson    **Date** 3/19/2026

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**          *Rev. 12/01/22*