**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUN 2 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| EVA LIGHTHISER; RIKKI HELD; LANDER BUSSE; OLIVIA VESOVICH; KATHRYN GRACE GIBSON-SNYDER; GEORGIANNA FISCHER; TALEAH HERNANDEZ; B.B., a minor, by and through his guardian S.B.; J.K., a minor, by and through his guardian L.A.; N. K., a minor, by and through his guardian L.A.; ULA JONES; RIPLEY CUNNINGHAM; J.M., a minor, by and through her guardian C.M.; J.H., a minor, by and through his guardian M.H.; I.H., a minor, by and through his guardian M.H.; KALALAPA WINTER; C.M., a minor, by and through her guardian E.M.; DELANEY REYNOLDS; AVERY MCRAE; MIKO VERGUN; ISAAC VERGUN; JOSEPH LEE, <br><br> Plaintiffs - Appellants, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States; EXECUTIVE OFFICE OF THE PRESIDENT OF THE UNITED STATES; UNITED STATES OFFICE OF MANAGEMENT AND BUDGET; | No. 25-6714 <br><br> D.C. No. 2:25-cv-00054-DLC <br><br> MEMORANDUM* |

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

RUSSELL VOUGHT, in his official capacity as Director of the Office of Management and Budget; JEFFREY BOSSERT CLARK, in his official capacity as Acting Administrator of the Office of Information and Regulatory Affairs; UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; LEE ZELDIN, in his official capacity as Administrator of the United States Environmental Protection Agency; UNITED STATES DEPARTMENT OF THE INTERIOR; DOUG BURGUM, in his official capacity as Secretary of the Interior; UNITED STATES DEPARTMENT OF ENERGY; CHRIS WRIGHT, in his official capacity as Secretary of Energy; UNITED STATES DEPARTMENT OF TRANSPORTATION; SEAN DUFFY, n his official capacity as Secretary of Transportation; UNITED STATES ARMY CORPS OF ENGINEERS; WILLIAM H. GRAHAM, Jr., Lieutenant General, in his official capacity as Chief of Engineers and Commanding General of the United States Army Corps of Engineers; JANET PETRO, in her official capacity as acting NASA Administrator; NATIONAL AERONAUTICS AND SPACE ADMINISTRATION; UNITED STATES DEPARTMENT OF COMMERCE; HOWARD W. LUTNICK, in his official capacity as Secretary of Commerce; NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION; LAURA GRIMM, in her official capacity as acting NOAA Administrator; NATIONAL SCIENCE FOUNDATION; BRIAN STONE, in his official capacity as Acting Director of NSF; UNITED STATES

2

25-6714

DEPARTMENT OF HEALTH AND HUMAN SERVICES; ROBERT F. KENNEDY, Jr., in his official capacity as Secretary of HHS; NATIONAL INSTITUTE FOR ENVIRONMENTAL HEALTH SCIENCES; JAYANTA BHATTACHARYA, in his official capacity as Director of NIH; UNITED STATES OF AMERICA,

Defendants - Appellees,

STATE OF MONTANA; STATE OF ALASKA; STATE OF ARKANSAS; STATE OF FLORIDA; STATE OF GEORGIA; STATE OF IDAHO; STATE OF INDIANA; STATE OF IOWA; STATE OF KANSAS; STATE OF LOUISIANA; STATE OF MISSOURI; STATE OF NEBRASKA; STATE OF NORTH DAKOTA; STATE OF OKLAHOMA; STATE OF SOUTH DAKOTA; STATE OF TEXAS; STATE OF UTAH; STATE OF WEST VIRGINIA; STATE OF WYOMING; GOVERNMENT OF GUAM,

Intervenor-Defendants - Appellees.

Appeal from the United States District Court
for the District of Montana
Dana L. Christensen, District Judge, Presiding

Argued and Submitted April 13, 2026
Portland, Oregon

Before: OWENS, VANDYKE, and SUNG, Circuit Judges.

Plaintiffs-Appellants are children and young adults who challenge three

3                                                            25-6714

executive orders signed by President Trump (collectively, the "Executive Orders") that set several broad directives for federal energy policy and direct agencies to implement those directives "in a manner consistent with applicable law." *See* Exec. Order No. 14154, 90 Fed. Reg. 8353, 8359 (Jan. 20, 2025); Exec. Order No. 14156, 90 Fed. Reg. 8433, 8437 (Jan. 20, 2025); Exec. Order No. 14261, 90 Fed. Reg. 15517, 15519 (Apr. 8, 2025). Plaintiffs appeal the district court's dismissal of their complaint for lack of Article III standing and the district court's denial of leave to amend their complaint.

We review de novo the district court's dismissal for lack of Article III standing, *Satanic Temple v. Labrador*, 149 F.4th 1047, 1050 (9th Cir. 2025), and review for abuse of discretion the district court's denial of leave to amend, *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Bonta*, 33 F.4th 1107, 1113 (9th Cir. 2022). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1. Plaintiffs have not plausibly alleged that their asserted injuries are "caused by the challenged" Executive Orders. *Juliana v. United States*, 947 F.3d 1159, 1168 (9th Cir. 2020).[1] According to the complaint, Plaintiffs will be harmed by numerous agency actions which, Plaintiffs allege, will "implement" the Executive Orders over several years. But Plaintiffs can only speculate that the Executive Orders are the

---

[1] We do not reach whether Plaintiffs' asserted injuries satisfy Article III's injury-in-fact requirement.

cause of the many agency actions they allege will exacerbate climate change. *See G.B. ex rel. G.P. v. EPA*, 172 F.4th 1042, 1060 (9th Cir. 2026) ("[A]gencies consider a great number of … factors in determining when, what, and how to regulate or take agency action." (citation modified)); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412–14 (2013) (rejecting traceability theory premised on speculation that government surveillance would occur, if at all, under challenged authority rather than another). Furthermore, Plaintiffs seek to enjoin *any* "implementing" agency action, including those not identified in the complaint. But we "cannot presume to predict how governing officials might exercise their discretion." *G.B.*, 172 F.4th at 1059 (citation modified). Whether agencies will rely on the Executive Orders when taking future action "is mere conjecture." *Id.* at 1061 (citation modified). For these reasons, the link between the Executive Orders and Plaintiffs' alleged injuries is too speculative to support Article III standing. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024); *G.B.*, 172 F.4th at 1058–62.

2. Plaintiffs' requested injunctive relief is also neither "substantially likely to redress their injuries" nor "within the district court's power to award." *Juliana*, 947 F.3d at 1170 (citation omitted).

As to the first redressability prong, Plaintiffs' standing theory suffers from a defect that mirrors their traceability problems. *See All. for Hippocratic Med.*, 602 U.S. at 380–81 (noting that "causation and redressability … are often flip sides of

the same coin" (citation modified)).  They have not plausibly alleged that enjoining federal agencies from implementing the Executive Orders is substantially likely to prevent agencies from taking similar emissions-inducing actions under other lawful authorities.

Second, as in *Juliana*, Article III does not give federal courts the power to grant or enforce the injunctive relief Plaintiffs seek.  *Juliana*, 947 F.3d at 1171.  The Executive Orders state the President's national security, energy, and economic policy in broad terms, then direct executive branch agencies to pursue these policy goals consistent with applicable law.  Plaintiffs' requested injunction, by its terms, would prevent the President from concluding, among other things, that it is "in the national interest to unleash America's affordable and reliable energy and natural resources," Exec. Order No. 14154, 90 Fed. Reg. at 8353; that current energy infrastructure is "far too inadequate to meet our Nation's needs," Exec. Order No. 14156, 90 Fed. Reg. at 8433; and that "coal is essential to our national and economic security," Exec. Order No. 14261, 90 Fed. Reg. at 15517.  The requested injunction would likewise bar agencies from effectuating the President's policies—"consistent with applicable law"—by reconsidering prior actions, "encourag[ing] energy exploration and production on Federal lands and waters," and "protect[ing] the United States's economic and national security … by ensuring that an abundant supply of reliable energy is readily accessible in every State and territory of the

25-6714

Nation." Exec. Order No. 14154, 90 Fed. Reg. at 8353–54.

Issuing such an injunction would effectively place one federal district court in charge of executive branch energy policy—"an extraordinary and unprecedented role" for a member of the "unelected and politically unaccountable branch." *Juliana*, 947 F.3d at 1173 (citation omitted); *see also id.* at 1171–72 (crafting environmental policy involves "a host of complex policy decisions entrusted … to the wisdom and discretion of the executive and legislative branches" (citation modified)).

Plaintiffs argue that, unlike the *Juliana* plaintiffs, who sought a court-supervised "remedial plan" requiring the federal government to "draw down harmful emissions," *id.* at 1170–72, they seek only "traditional prohibitory injunctive relief." But like the district court, we are not persuaded. Similar to the injunction requested in *Juliana*, the injunction Plaintiffs seek would require extensive judicial supervision of executive branch actions related to energy policy. Indeed, Plaintiffs explicitly seek to undo everything from staffing reductions, to the revocation of research grants, to anticipated rule changes, to the type of language the current administration has used on government websites. To assign such policy-laden choices to one district court would invert the "common understanding of what activities are appropriate to legislatures, to executives, and to courts." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

Moreover, as the district court recognized, enforcing such an injunction would

require a court to determine whether "an untold number" of executive branch actions even "implement" the challenged Executive Orders. That task would present challenging questions that "necessarily would entail a broad range of policymaking." *Juliana*, 947 F.3d at 1172. For example, would the injunction prohibit agencies from advancing *any* policies like those expressed in the Executive Orders—promoting coal, oil, natural gas and hydropower; increasing domestic energy production; or expediting permitting and leasing timelines, to name a few? For every energy-policy action, would the court need to scrutinize agency officials' motives in search of *any* hidden reliance on the enjoined Executive Orders? And what if an agency were to rely on other authorities in addition to the Executive Orders? The district court correctly recognized that disputes over such questions would inevitably result in the court "spending a lot of time together" with the parties and holding hearings "until the expiration of [their] collective lifetimes." These unmanageable consequences, for which there are no judicially manageable standards, confirm that Plaintiffs' requested injunction is beyond Article III power. *Juliana*, 947 F.3d at 1173–75. After all, an injunction "is only as good as the court's power to enforce it." *Id.* at 1173.

Further, by effectively challenging hundreds of current and anticipated agency actions in one lawsuit, Plaintiffs seek to circumvent the jurisdictional and procedural rules Congress has established for challenges to agency actions. *See, e.g.*, 5 U.S.C.

§§ 702, 704, 706; 42 U.S.C. § 7607(b)(1). Such a sweeping injunction against hundreds of agency actions in one lawsuit is unprecedented. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 892–94 (1990) (explaining that rather than "wholesale" challenges to "flaws in the entire program," a "case-by-case approach … is the traditional, and remains the normal, mode of operation of the courts" (citation modified)); *see also Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 74 (1996) ("Where Congress has created a remedial scheme for the enforcement of a particular federal right, we have, in suits against federal officers, refused to supplement that scheme with one created by the judiciary.").

3. Plaintiffs also argue that declaratory relief alone will likely redress their injuries. We have twice rejected the same argument. *See Juliana*, 947 F.3d at 1170 (holding that declaratory relief was "unlikely by itself to remediate [the plaintiffs'] alleged injuries absent further court action"); *G.B.*, 172 F.4th at 1062–63 (describing *Juliana* as a "strikingly similar lawsuit" and holding that declaring the challenged policies unconstitutional was unlikely to "mitigate the young plaintiffs' physical symptoms or property damage"). And we do so again here: declaratory relief "alone is not substantially likely to mitigate the [P]laintiffs' asserted … injuries." *Juliana*, 947 F.3d at 1170; *see G.B.*, 172 F.4th at 1063.

4. The district court did not abuse its discretion when it declined to allow Plaintiffs to amend their complaint. Plaintiffs contend that they should have been

25-6714

allowed to amend their complaint to "cure any possible redressability defects." But where Plaintiffs have not identified "specific allegations that might rectify" the fundamental problems with their standing theory, *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011), there is no abuse of discretion. *See G.B.*, 172 F.4th at 1065 (affirming denial of leave to amend because plaintiffs' standing theories contained "deep, fundamental flaws at odds with principles of Article III standing").

**AFFIRMED.**