**No. 25-6714**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

EVA LIGHTHISER; et al.,
*Plaintiffs-Appellants*,

v.

DONALD J. TRUMP, in his official capacity as President
of the United States; et al.,
*Defendants-Appellees*,

STATE OF MONTANA; et al.,
*Defendants/Intervenors-Appellees*.

---

On Appeal from the United States District Court
for the District of Montana – Butte Division (No. 2:25-cv-00054-DLC)
Hon. Dana L. Christensen

---

**PETITION FOR REHEARING EN BANC**

---

Roger Sullivan
McGARVEY LAW
345 1st Avenue East
Kalispell, MT 59901
(406) 752-5566
rsullivan@mcgarveylaw.com

Julia A. Olson
Andrea K. Rodgers
Nathan Bellinger
OUR CHILDREN'S TRUST
1216 Lincoln Street
Eugene, OR 97401
(415) 786-4825
julia@ourchildrenstrust.org
andrea@ourchildrenstrust.org
nate@ourchildrenstrust.org

Philip L. Gregory
GREGORY LAW GROUP
1250 Godetia Drive
Redwood City, CA 94062
(650) 278-2957
pgregory@gregorylawgroup.com

Daniel C. Snyder
Haley Nicholson
PUBLIC JUSTICE
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 797-8600
dsnyder@publicjustice.net
hnicholson@publicjustice.net

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION-RULE 40 STATEMENT ......................................................... 1

ARGUMENT ...................................................................................................... 3

    I.      Whether Executive Orders Are Reviewable Raises Exceptionally Important Questions ................................................................................ 3

    II.     The Panel Opinion Disregarded and Conflicts With Supreme Court and Ninth Circuit Precedent that Requires the Court to Accept as True Undisputed Material Facts Alleged or Proven on a Facial Challenge to Jurisdiction ................................................................................................ 5

    III.    The Panel Opinion Conflicts with Binding Precedents ............................ 11

    IV.    The Panel's Holding Creates a Circuit Split ............................................. 16

CONCLUSION ................................................................................................. 17

APPENDIX A    *Lighthiser v. Trump*, No. 25-6714, Memorandum (9th Cir. June 2, 2026)

# TABLE OF AUTHORITIES

**Cases**

*Am. Fed'n of Gov't Emps. v. Trump*,
139 F.4th 1020 (9th Cir. 2025) ...................................................................14

*Barke v. Banks*,
25 F.4th 714 (9th Cir. 2022) ......................................................................17

*Block v. Canepa*,
175 F.4th 642 (6th Cir. 2026) ....................................................................15

*Bolling v. Sharpe*,
347 U.S. 497 (1954) ...................................................................................10

*Chamber of Com. of United States v. Reich*,
74 F.3d 1322 (D.C. Cir. 1996) ...................................................................16

*City & Cnty. of San Francisco v. Trump*,
897 F.3d 1225 (9th Cir. 2018) ...................................................................14

*Day v. Henry*,
152 F.4th 961 (9th Cir. 2025) ...........................................................1, 15, 16

*Diamond Alt. Energy, LLC v. Env't Prot. Agency*,
606 U.S. 100 (2025) ...........................................................................1, 11, 12

*Fed. Bureau of Investigation v. Fikre*,
601 U.S. 234 (2024) .................................................................................1, 5

*G.B. v. EPA*,
172 F.4th 1042 (9th Cir. 2026) ..................................................................11

*Glob. Health Council v. Trump*,
153 F.4th 1 (D.C. Cir. 2025) ...................................................................1, 16

*Haitian Refugee Ctr. v. Gracey*,
809 F.2d 794 (D.C. Cir. 1987) .....................................................................4

*Juliana v. United States*,
947 F.3d 1159 (9th Cir. 2020) ....................................................................11

*Kirola v. City & Cnty. of San Francisco*,
  860 F.3d 1164 (9th Cir. 2017)..................................................................1, 15, 16

*LaDuke v. Nelson*,
  762 F.2d 1318 (9th Cir. 1985) ...............................................................................10

*League of Conservation Voters v. Biden*,
  843 Fed. Appx. 937 (9th Cir. 2021)........................................................................4

*Learning Res., Inc. v. Trump*,
  607 U.S. 229 (2026) ..............................................................................1, 12, 13, 14

*Mass. Lobstermen's Ass'n v. Ross*,
  945 F.3d 535 (D.C. Cir. 2019).........................................................................1, 16

*Maya v. Centex Corp.*,
  658 F.3d 1060 (9th Cir. 2011)............................................................................1, 5

*Missouri v. Biden*,
  52 F.4th 362 (8th Cir. 2022) ...................................................................................4

*N.H. Indonesian Cmty. Support v. Trump*,
  157 F.4th 29 (1st Cir. 2025)............................................................................1, 16

*Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*,
  167 F.4th 86 (4th Cir. 2026) ...........................................................................1, 16

*Pacito v. Trump*,
  169 F.4th 895 (9th Cir. 2026) ...........................................................................1, 9

*Shulman v. Kaplan*,
  58 F.4th 404 (9th Cir. 2023) ........................................................................1, 15, 16

*Skaff v. Meridien N. Am. Beverly Hills, LLC*,
  506 F.3d 832 (9th Cir. 2007) ..................................................................................6

*Trump v. Barbara*,
  No. 25-365, 2026 WL 1870543 (U.S. June 30, 2026)................................passim

*V.O.S. Selections, Inc. v. Trump*,
  149 F.4th 1312 (Fed. Cir. 2025) ...........................................................................12

iii

*V.O.S. Selections, Inc. v. United States*,
772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025) ...............................................12, 14

*W. Va. State Bd. of Educ. v. Barnette*,
319 U.S. 624 (1943) ...........................................................................................10

**Statutes**

15 U.S.C. § 2902 ..................................................................................................2

42 U.S.C. § 13201, *et seq.* ..................................................................................2

42 U.S.C. § 13281(a)............................................................................................2

42 U.S.C. § 13311 ................................................................................................2

42 U.S.C. § 13331(a)............................................................................................2

**Rules**

Fed. R. App. P. 32.1(a) ........................................................................................4

Fed. R. App. P. 40(b)(2).................................................................................1, 2, 3

**Other Authorities**

Exec. Order 14160, Protecting the Meaning and Value of American Citizenship,
90 Fed. Reg. 8449 (Jan. 29, 2025)...............................................................14, 15

Exec. Order 14193, Imposing Duties to Address the Flow of Illicit Drugs Across
Our Northern Border, 90 Fed. Reg. 9113 (Feb. 7, 2025) ....................................14

Exec. Order 14194, Imposing Duties to Address the Situation at Our Southern
Border, 90 Fed. Reg. 9117 (Feb. 7, 2025) ........................................................14

Exec. Order 14195, Imposing Duties to Address the Synthetic Opioid Supply
Chain in the People's Republic of China, 90 Fed. Reg. 9121 (Feb 7, 2025) ......14

Exec. Order 14257, Regulating Imports with a Reciprocal Tariff to Rectify Trade
Practices that Contribute to Large and Persistent Annual United States Goods
Trade Deficits, 90 Fed. Reg. 15041 (Apr. 7, 2025) .....................................13, 14

Exec. Order 14266, Modifying Reciprocal Tariff Rates to Reflect Trading
Partner Retaliation and Alignment, 90 Fed. Reg. 15625 (Apr. 15, 2025) ...........14

*Learning Res., Inc. v. Trump*, No. 24-1287, Opening Br. for Resp'ts in No. 24-1287 & Pet'rs in No. 25-250 (U.S. Sept. 19, 2025) .............................................13

Neil Gorsuch & Janie Nitze, *Heroes of 1776: The Story of the Declaration of Independence* (2026) .......................................................................................2

## INTRODUCTION-RULE 40 STATEMENT

The panel's decision is the first circuit court opinion ever to deny Article III judicial *power* to review an allegedly unconstitutional Executive Order, warranting en banc review. It conflicts with **Supreme Court opinions** in *Trump v. Barbara*, No. 25-365, 2026 WL 1870543 (U.S. June 30, 2026); *Learning Res., Inc. v. Trump*, 607 U.S. 229 (2026); *Diamond Alt. Energy, LLC v. Env't Prot. Agency*, 606 U.S. 100 (2025); and *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234 (2024), **this Court's opinions** in *Pacito v. Trump*, 169 F.4th 895 (9th Cir. 2026); *Day v. Henry*, 152 F.4th 961 (9th Cir. 2025); *Shulman v. Kaplan*, 58 F.4th 404 (9th Cir. 2023); *Kirola v. City & Cnty. of San Francisco*, 860 F.3d 1164 (9th Cir. 2017); and *Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011) and **other Circuit's opinions** in *Glob. Health Council v. Trump*, 153 F.4th 1 (D.C. Cir. 2025); *Mass. Lobstermen's Ass'n v. Ross*, 945 F.3d 535 (D.C. Cir. 2019); *N.H. Indonesian Cmty. Support v. Trump*, 157 F.4th 29 (1st Cir. 2025); and *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, 167 F.4th 86 (4th Cir. 2026). Fed. R. App. P. 40(b)(2)(A-C).

In this case, individual children and youth allege specific sections of three Executive Orders ("EOs" or "Challenged EOs") are unconstitutional because the policy the EOs ordain, and the agency actions the EOs mandate, violate Plaintiffs' Fifth Amendment rights to life and liberty and separation of powers. The Challenged EOs ordain policies to "unleash" fossil fuels while restricting renewable energy

1

deployment and suppressing climate change science deemed an "undue burden" on the expansion of fossil fuels. The EOs further direct agencies to implement the "unleashed" policy even though the EOs contravene long-standing energy and climate science research directives in federal law[1] and infringe Plaintiffs' constitutional rights. The district court found "Plaintiffs have presented overwhelming evidence that implementation of the Challenged EOs" will exacerbate "a children's health emergency" and "Plaintiffs' expert testimony relates their injuries to increased exposure to atmospheric carbon dioxide caused by the Challenged EOs." 1-ER-13, 1-ER-17. Unless the panel's holding is vacated, the EOs will be the first in U.S. history, as far as Plaintiffs can tell, that the judiciary lacked the power to review. As such, this case raises questions of exceptional importance.[2] Fed. R. App. P. 40(b)(2)(D).

---

[1] *See, e.g.*, 42 U.S.C. § 13311 (promoting "increases in the production and utilization of energy from renewable energy resources"); 42 U.S.C. § 13331(a) (directing research programs to "achiev[e] the control of . . . greenhouse gases, or other emissions resulting from coal use or conversion"); 42 U.S.C. § 13281(a) (creating program "designed to accelerate the development and use of electric motor vehicles"); 42 U.S.C. § 13201, *et seq.* (providing loan guarantees to avoid GHGs); 15 U.S.C. § 2902 (mandating creation of "national climate program that will assist the Nation and the world to understand and respond to natural and man-induced climate processes and their implications").

[2] *See* Neil Gorsuch & Janie Nitze, *Heroes of 1776: The Story of the Declaration of Independence* (2026) (dedicating their book "[f]or America's children. As you turn these pages, we hope you see the promise of liberty our Nation holds for you – and the courage it takes to defend it.").

2

The panel's decision is flawed both factually (in how it ignores the "overwhelming evidence") and legally (in how it contradicts and ignores binding precedent). *See* Fed. R. App. P. 40(b)(2)(A)-(C). No decision should disregard a complaint's pertinent factual allegations, Plaintiffs' unrebutted evidence, and the district court's factual findings, in favor of a panel's contrary presumptions and speculations. This case should be reheard en banc.

### ARGUMENT

The reviewability of allegedly unconstitutional EOs is an exceptionally important issue, particularly EOs found to cause "a children's health emergency" that allegedly infringe Fifth Amendment life and liberty rights. Plaintiffs specify below in clear table format facts required to be taken as true yet ignored in favor of the panel's own speculation. Plaintiffs then identify binding precedent on Article III standing and EO justiciability, again in clear table format, that the panel's opinion wholly disregarded, creating a circuit split.

**I.     Whether Executive Orders Are Reviewable Raises Exceptionally Important Questions**

The panel's decision presents three questions of exceptional importance:

(1)     At the motion to dismiss stage, can courts ignore factual allegations in the complaint, uncontested at a preliminary injunction hearing and found by the district court, that the EOs are the cause of Plaintiffs' injuries for purposes of standing?

3

(2)     Do Article III courts lack power to issue any relief whatsoever against allegedly unconstitutional EOs?

(3)     Does an EO's inclusion of broad goals alongside specific policy directives that contradict federal statutes shield the entire EO from judicial review?

The panel erroneously answered "yes" to all three questions. Yet courts routinely hold EOs are constitutional (or not) on the merits and no other federal appellate court has ever held it lacks *power* to review an EO's constitutionality.[3] *See* Mem. at 5-6 (Dkt. 97.1). The panel's treatment of this case is unprecedented, creates a circuit split, and must be corrected.

This petition raises questions of exceptional importance as to the reviewability of EOs alleged to unconstitutionally harm children's lives and liberties, the crux of the separation of powers between judicial and executive branches. Unless the panel's holding is vacated, the three EOs at issue here will forever remain *the first* EOs in history that the judiciary lacked power to review. Federal Rule of Appellate Procedure 32.1(a) ensures government lawyers will be able to cite the panel's

---

[3] When courts lack jurisdiction to review an EO, it is because the plaintiffs are not injured, the EO does not cause the plaintiffs' injury, or the claims are moot, never that a federal court lacks the power to do so. *See, e.g.*, *Missouri v. Biden*, 52 F.4th 362 (8th Cir. 2022) (alleged injuries were neither concrete nor traceable to EO); *Haitian Refugee Ctr. v. Gracey*, 809 F.2d 794 (D.C. Cir. 1987) (plaintiffs failed to establish causation for harms); *League of Conservation Voters v. Biden*, 843 Fed. Appx. 937 (9th Cir. 2021) (EO had been revoked and challenge was moot).

opinion as precedent to claim the judiciary lacks power to review future EOs, creating a circuit split and confusion where there should be none. The panel's opinion will sow doubt in district courts' minds where there should be none. And the opinion will incentivize Presidents to include broad directives in their EOs going forward, even if the broad directives are illegal, with expectations of insulating the entire EO from judicial review. En banc review is necessary to avoid such a discordant future and to confirm EOs are not above and beyond judicial review, even those that implicate matters of national import. *See, e.g.*, *Barbara*, 2026 WL 1870543 (deciding whether EO broadly denying birthright citizenship violated the Fourteenth Amendment or Immigration and Nationality Act).

## II. The Panel Opinion Disregarded and Conflicts With Supreme Court and Ninth Circuit Precedent that Requires the Court to Accept as True Undisputed Material Facts Alleged or Proven on a Facial Challenge to Jurisdiction

This Court's duty to accept all material allegations as true and construe them in favor of the plaintiffs asserting jurisdiction when resolving facial challenges to jurisdiction cannot be abrogated. *Fikre*, 601 U.S. at 237 n.1; *Maya*, 658 F.3d at 1068. The panel quoted, then disregarded, that standard, side-stepping Plaintiffs' unrebutted[4] allegations and evidence, as well as the district court's factual findings

---

[4] The district court noted "Defendants did not present any witness testimony," and thus Plaintiffs' allegations and evidence on which the district court based its factual findings, were uncontested. 1-ER-11.

leading to its conclusion "that Plaintiffs' injuries are both sufficiently tied to the Challenged EOs and meaningfully contribute to global greenhouse gas concentrations such that causation is satisfied."[5] 1-ER-22–23. For example, the panel ignored the following facts found by the district court to establish causation:

| District Court Facts Found | Cite |
|---|---|
| "Plaintiffs have presented overwhelming evidence that the climate is changing at a staggering pace, and that this change stems from the rise in atmospheric carbon dioxide, caused by the production and burning of fossil fuels." | 1-ER-12. |
| "Plaintiffs have presented overwhelming evidence that implementation of the Challenged EOs will increase the concentration of atmospheric carbon dioxide, thereby exacerbating the harms Plaintiffs experience from an already-warming climate. (Doc. 25-24 ¶ 17; Doc. 25-20 ¶ 9.) Specifically, Plaintiffs' expert Jesse Jenkins, Ph.D., estimates that the Challenged EOs will result in an immediate rise in carbon dioxide. By 2027, Plaintiffs estimate the Challenged EOs will generate an additional 205 million annual metric tons of carbon dioxide-equivalent; by 2035, this number will rise to 510 million metric tons annually. (Doc. 25-20 ¶¶ 21, 9, 18.)" | 1-ER-13. |
| "Plaintiffs have alleged overwhelming evidence that climate change is affecting them now in concrete ways, and that these effects will imminently worsen as a result of the Challenged EOs." | 1-ER-18. |

---

[5] The panel did no clear error review of the district court's findings of fact on standing. *See Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832 (9th Cir. 2007).

| | |
|---|---|
| "The predicted emissions from the Challenged EOs are certainly greater than those from five oil refineries in Washington State, and although not as substantial as the 50-year energy policy of the United States at issue in *Juliana*, the increase is—at least according to Plaintiffs' experts—still scientifically significant." | 1-ER-23. |
| "The Court finds Plaintiffs' experts sufficiently establish that the Challenged EOs will render a meaningful contribution to atmospheric carbon dioxide levels." | 1-ER-23. |

Instead of accepting Plaintiffs' allegations and evidence as true and construing them in Plaintiffs' favor, the panel substituted its own speculation—without record support—that the asserted injuries are *not* "'caused by the challenged' Executive Orders," finding: "Plaintiffs can only speculate that the Executive Orders are the cause of the many agency actions they allege will exacerbate climate change." Mem. at 4-5. However, Plaintiffs provided multiple examples of agency actions being implemented because of the EOs, all of which were disregarded by the panel in favor of its own assumptions. Here are three that show the panel's error:

| EO Directive | Example Implementation Action | Plaintiffs' Injuries |
|---|---|---|
| EO 14154 Sec. 3(a): "The heads of all agencies shall review all existing regulations, orders, guidance documents, policies, settlements, consent orders, and any other agency actions . . . to identify those agency actions that impose an undue burden on the | DOI Secretarial Order 3418: "This Order implements provisions of . . . EO 14154" and directs Assistant Secretaries to "offer more parcels of the public land for oil and gas leasing," and "ensure" DOI "rules, guidance, and policies . . . do | 6-ER-1265 (Compl. ¶ 92); 6-ER-1267 (Compl. ¶ 102); 6-ER-1224–26 (Compl. ¶¶ 10-11) |

7

| identification, development, or use of domestic energy resources—with particular attention to oil, natural gas, coal, hydropower, biofuels, critical mineral, and nuclear energy resources . . . ." | not bias government or private-sector decision making in favor of renewable energy[.]" 6-ER-1288 (Comp. ¶¶ 173, 175); 5-ER-1153 (Olson Decl. ¶ 26). | 6-ER-1229 (Compl. ¶ 15); 6-ER-1232–33 (Compl. ¶ 19); 6-ER-1244–46 (Compl. ¶ 30). |
|---|---|---|
| EO 14154 Sec. 7(a): "All agencies shall immediately pause the disbursement of funds appropriated through the Inflation Reduction Act of 2022 (Public Law 117-169) or the Infrastructure Investment and Jobs Act (Public Law 117-58) . . . ." | "EPA and Administrator Zeldin froze funds for electric school buses for school districts in Montana and elsewhere." 5-ER-1151 (Olson Decl. ¶ 22) | 6-ER-1235–36 (Compl. ¶ 21); 5-ER-1000 (J.M. Decl.); 4-ER-720 (Balmes Decl.). |
| EO 14154 Sec. 3(b): "[E]ach agency shall . . . develop and begin implementing action plans to suspend, revise, or rescind all agency actions identified as unduly burdensome" "on the identification, development, or use of domestic energy resources . . . ." | "NASA canceled the contract with the . . . firm coordinating . . . hundreds of researchers to write the 2027 [National Climate Assessment] NCA. The cancelation permanently severed climate change work occurring across agencies and means the sixth NCA will not move forward or be published, despite the congressional mandate." 6-ER-1299 (Compl. ¶¶ 207-08). | 1-ER-15 (citing Doc. 25-1 ¶¶ 4, 7 (4-ER-700–01, 4-ER-703)); 6-ER-1299–1300 (Compl. ¶¶ 209-13); 6-ER-1244 (Compl. ¶ 29). |

Thus, it is not "conjecture" that agencies will implement the EOs in the way the President directed when the allegations show the EOs *are* being so implemented by agencies. *See, e.g.*, 5-ER-1177 (DOT Secretary relying on "unleashing EO"

8

directing agencies to "identify and eliminate" actions "which reference or relate in any way to climate change [and] 'greenhouse gas' emissions"). The panel disregarded Plaintiffs' allegations and evidence, instead presuming, *without any citation to the record*, that agencies may defy the EOs and that "Plaintiffs seek to enjoin *any* 'implementing' agency action, including those not identified in the complaint." Mem. at 5. Without even allowing Plaintiffs to prove their allegations on the merits, the panel thereby unilaterally expanded the scope of Plaintiffs' proposed injunctive relief to fit its own narrative for dismissal (a narrative beyond the scope of Plaintiffs' Complaint).

The panel's disregard of the allegations and facts denied Plaintiffs any ability to bring a constitutional challenge to the EOs. Challenges to EOs *cannot* proceed under the Administrative Procedure Act (APA), as the panel wrongly asserts, Mem. at 8-9, because "the President is not an agency within the meaning of the [APA]," and consequently, "there is no final agency action that may be reviewed under the APA standards." *Pacito*, 169 F.4th at 931; Reply at 28-29 (Dkt. 86.1) (briefing this). If an EO established a policy directive that the National Park Service revise all policies and operations to ensure women are precluded from visiting National Parks, even though such policy violates 31 U.S.C. § 6711 and the Fifth and Fourteenth Amendments, there would be no question a federal court has Article III power to declare such a policy unconstitutional and enjoin its implementation, even if the

9

policy must ultimately be carried out by federal agencies in various ways. *See, e.g.,* *Barbara*, 2026 WL 1870543 (overturning birthright citizenship EO declaring policy that "the privilege of United States citizenship does not automatically extend to persons born in the United States" whose parents are not lawful U.S. citizens or permanent residents and directing federal agencies to implement the policy "with respect to their operations and activities"); *Bolling v. Sharpe*, 347 U.S. 497 (1954); *LaDuke v. Nelson*, 762 F.2d 1318, 1325 (9th Cir. 1985); *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 638 (1943); *see also* Opening at 38 (Dkt. 21.1); Reply at 3-6. Put differently: EOs that mandate unconstitutional or otherwise illegal policies are not immune from judicial review and need not await full implementation.

**Unconstitutional Government Policies**

≠ (cannot be)

**Lawful Policy Choice**
(within Executive discretion)

The panel's disregard of Plaintiffs' allegations and evidence about how the EOs caused their injuries did not just defy the standard of review. It immunized the EOs from judicial review when the Court was required to exercise judicial review power to "keep [the] promise" of fundamental rights to "every free-born person in this land" as the Framers intended. *See Barbara*, 2026 WL 1870543, at *15. Such a

result has grave consequences for youth Plaintiffs and our constitutionally enshrined separation of powers, and warrants en banc review.

### III. The Panel Opinion Conflicts with Binding Precedents

The panel's dismissal, based largely on *Juliana v. United States*, 947 F.3d 1159, 1168 (9th Cir. 2020), which did not involve a challenge to EOs and concerned the court's power to issue broad affirmative injunctive relief, is untenable given recent precedent.[6] *See* Mem. at 4-9. The panel ignored, by not citing or distinguishing, post-*Juliana* precedent directly on point with the facts and law of this case and incompatible with the panel's decision as summarized below.

*Diamond*, 606 U.S. 100, was heavily briefed in this appeal and referenced by the district court as "edg[ing] Plaintiffs in the right direction" as to redressability. 1-ER-28; *see* Reply at 1, 13-18, 20, 24, 27, 30; Opening at 1, 10, 12, 27, 33, 35. The panel decision does not cite or distinguish and plainly conflicts with *Diamond* as follows:

---

[6] For the points of standing law that the panel held were controlled by *Juliana* and *G.B.*, the pertinent facts could not be further apart. Redressability was lacking in *Juliana* because the "crux" of the relief was a court-supervised remedial plan to remedy *over 50 years* of almost-entirely past conduct, which this Court held was beyond an Article III court's power to award, and which declaratory relief alone could not retrospectively remedy. The instant case challenges just *three EOs*, issued *four months* before the case was filed, directing future conduct. *Compare Juliana*, 947 F.3d at 1169 *with* 6-ER-1220, 6-ER-1338; Opening at 13-20. Traceability and redressability were lacking in *G.B.* because the causal chain was broken by a discretionary analysis and a new EO. *G.B. v. EPA*, 172 F.4th 1042, 1058-61 (9th Cir. 2026).

| *Diamond* | **Panel's Error** |
|---|---|
| Courts *must presume* that government actions will have their intended effect, and that invalidating the action will have the opposite effect. 606 U.S. at 116-18, 120-21. | Concluding it "cannot presume to predict how governing officials might exercise their discretion. Whether agencies will rely on the Executive Orders when taking future action is mere conjecture." Mem. at 5 (citation modified). |
| Courts should draw "commonsense inferences" about the likely effects of challenged government conduct when deciding causation and redressability. 606 U.S. at 116, 114. | Rejecting commonsense inference that since the EOs will "increase fossil fuel pollution" and "will result in an immediate rise in carbon dioxide," enjoining the EOs is "substantially likely" to reduce emissions. Mem. at 5-6; 1-ER-8, 1-ER-13; 6-ER-1264. |
| The sole available remedy—a declaration vacating the challenged agency decision that caused injury—satisfied redressability. 606 U.S. at 114. | Assuming "declaratory relief alone is not substantially likely to mitigate the Plaintiffs' asserted injuries." Mem. at 9 (citation modified). |

*Learning Resources*, 607 U.S. 229, *aff'g*, *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1330 (Fed. Cir. 2025) (en banc), *aff'g*, 772 F. Supp. 3d 1350, 1368 (Ct. Int'l Trade 2025), decided after the district court's dismissal, was extensively briefed in Plaintiffs' Reply and argued. *See* Reply at 3-5, 8-9, 12, 17-18, 20-21, 28, 32, 34-35. The panel decision does not cite or distinguish and plainly conflicts with *Learning Resources* as follows:

| *Learning Resources* | **Panel's Error** |
|---|---|
| Declaring tariff EOs unlawful even though "numerous other federal statutes authorize[d] the President to impose tariffs and might justify most (if not all) of the tariffs at issue" there. 607 U.S. at 334 (Kavanaugh, J., dissenting). | Finding redressability absent because "enjoining federal agencies from implementing the Executive Orders is [not] substantially likely to prevent agencies from taking similar emissions-inducing actions under other lawful authorities." Mem. at 6. |
| Declaring EOs unlawful notwithstanding dissent's argument that "refund[ing] billions of dollars to importers who paid the IEEPA tariffs . . . [is] likely to be a 'mess.'" 607 U.S. at 334-35 (Kavanaugh, J., dissenting). | Holding it lacks jurisdiction because "[s]uch a sweeping injunction against hundreds of agency actions in one lawsuit is unprecedented." Mem. at 9. |
| Invalidating EOs, notwithstanding Government's argument that doing so would upend "one of the country's top foreign policy priorities." *Learning Res., Inc. v. Trump*, No. 24-1287, Opening Br. for Resp'ts in No. 24-1287 & Pet'rs in No. 25-250, at 3, 10, 23 (U.S. Sept. 19, 2025). | Concluding "Article III does not give federal courts the power to grant" an injunction that would "bar agencies from effectuating the President's policies[.]" Mem. at 6. |
| One of the EOs struck down stated the President's relevant policy in broad terms, followed by specific provisions directing executive branch agencies to take certain actions to pursue those policy goals. EO 14257 §7(b), 90 Fed. Reg. 15041. | Stating "Article III does not give federal courts the power" to grant any injunction here because "[t]he Executive Orders state the President's national security, energy, and economic policy in broad terms, then direct executive branch agencies to pursue these policy goals"; thus, an "injunction would effectively place one federal district court in charge of executive branch energy policy." Mem. at 6-7; *see also id*. at 4. |

13

| | |
|---|---|
| All five EOs struck down contained savings clauses that ordered implementation "consistent with applicable law."[7] *V.O.S. Selections*, 772 F. Supp. at 1368; *see* Reply at 34-35 (briefing this)[8] | Quoting the EOs' "consistent with applicable law" boilerplate twice in one paragraph to explain why "Article III does not give federal courts the power to grant or enforce the injunctive relief Plaintiffs seek." Mem. at 6; *see also id.* at 4. |

*Barbara*, 2026 WL 1870543, was decided after the panel decision was issued, elevating the need for en banc review. The panel's decision conflicts with *Barbara* as follows:

| *Barbara* | Panel's Error |
|---|---|
| Reviewing EO establishing Trump's unconstitutional birthright citizenship policy and directing agencies to enforce and implement the EO "with respect to their operations and activities," without requiring Plaintiffs to prove agencies would exclusively rely on EO when implementing policy. EO 14160, 90 Fed. Reg. 8449. | Declining to review EOs that established allegedly unconstitutional energy policy directing agency action because "[w]hether agencies will rely on the Executive Orders when taking future action 'is mere conjecture.'" Mem. at 5. |

---

[7] The five EOs in *Learning Resources/V.O.S.* are EO 14257 §7(b), 90 Fed. Reg. 15041; EO 14266 §6(b), 90 Fed. Reg. 15625; EO 14193 §6(b), 90 Fed. Reg. 9113; EO 14194 §6(b), 90 Fed. Reg. 9117; and EO 14195 §6(b), 90 Fed. Reg. 9121.

[8] *See also City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1239 (9th Cir. 2018) (affirming EO section unconstitutional notwithstanding a savings clause); *Am. Fed'n of Gov't Emps. v. Trump*, 139 F.4th 1020, 1038 (9th Cir. 2025) (holding EO 14210 ultra vires notwithstanding savings clause).

14

| | |
|---|---|
| Upholding order enjoining enforcement of the EO because it violates the Fourteenth Amendment of the U.S. Constitution without requiring Plaintiffs to allege or prove agencies wouldn't implement the unconstitutional policy under other authorities. 2026 WL 1870543, at *15. | Finding no redressability because Plaintiffs "have not plausibly alleged that enjoining federal agencies from implementing the Executive Orders is substantially likely to prevent agencies from taking similar emissions-inducing actions under other lawful authorities." Mem. at 6. |
| Upholding district court order enjoining enforcement of unconstitutional EO with language that the EO "shall be implemented consistent with applicable law." 90 Fed. Reg. 8449; 2026 WL 1870543, at *15. | Finding "Article III does not give federal courts the power to grant or enforce the injunctive relief Plaintiffs seek" because "the requested injunction would likewise bar agencies from effectuating the President's policies— 'consistent with applicable law.'" Mem. at 6 (quoting EO). |
| Declaring birthright citizenship policy established in EO unconstitutional because "the Framers of the Fourteenth Amendment extended [the] promise" of citizenship "to every free-born person in this land." 2026 WL 1870543, at *15. | Finding no redressability because declaring unleashing fossil fuels energy policy unconstitutional "would effectively place one federal district court in charge of executive branch energy policy." Mem. at 7. |

*Day*, 152 F.4th at 968; *Shulman*, 58 F.4th at 409; *Kirola*, 860 F.3d at 1175-76 (collectively "the *Day* cases") were also heavily briefed by Plaintiffs. *See* Opening at 15-16, 27-28, 54-55; Reply at 7, 9-10; Dkt. 93.1.[9] The panel decision does not cite or distinguish and conflicts with the *Day* cases as follows:

---

[9] The panel's decision also conflicts with *Block v. Canepa*, 175 F.4th 642, 651 (6th Cir. 2026), a more recently-decided case that applies *Day*.

| *Day cases* | Panel's Error |
|---|---|
| If requested relief fails redressability, court cannot conclude redressability is lacking; it must attempt to fashion remedy within its equitable power that would redress the injury. *See Day*, 152 F.4th at 968; *Shulman*, 58 F.4th at 409; *Kirola*, 860 F.3d at 1175-76; Reply at 7 (citing the *Day* cases). | Panel dismissed case because "Plaintiffs' requested injunctive relief" failed redressability, without attempting to fashion a narrower remedy within its power. Mem. at 5. |

## IV.     The Panel's Holding Creates a Circuit Split

By holding a court lacks Article III power to award any relief whatsoever to remedy an allegedly unconstitutional EO, the panel's decision creates a circuit split, including *recent* decisions confirming Article III authority to review an EO:

**D.C. Circuit:** *Glob. Health Council*, 153 F.4th at 16 (affirming *Chamber of Com. of United States v. Reich*, 74 F.3d 1322, 1332 (D.C. Cir. 1996)) (Article III standing to challenge EO freezing foreign aid spending); *see also* **Ross**, 945 F.3d at 540 (presidential proclamations are justiciable).

**First Circuit:** *N.H. Indonesian Cmty. Support*, 157 F.4th 29 (Article III standing to challenge EO barring American citizenship for individuals born to noncitizen parents).

**Fourth Circuit:** *Nat'l Ass'n of Diversity Officers in Higher Educ.*, 167 F.4th 86 (Article III standing to challenge EO provision to deter DEI programs).

16

The panel's decision is unprecedented in denying Article III judicial *power* to review allegedly unconstitutional EOs, warranting en banc review.

**CONCLUSION**

Youth Plaintiffs respectfully request this Court grant rehearing en banc, vacate, and remand the case to the district court for further proceedings.[10]

Date: July 16, 2026

/s/ *Julia A. Olson*
Julia A. Olson
Andrea K. Rodgers
Nathan Bellinger
OUR CHILDREN'S TRUST
1216 Lincoln Street
Eugene, OR 97401
(415) 786-4825
julia@ourchildrenstrust.org
andrea@ourchildrenstrust.org
nate@ourchildrenstrust.org

Roger Sullivan
McGARVEY LAW
345 1st Avenue East
Kalispell, MT 59901
(406) 752-5566
rsullivan@mcgarveylaw.com

Philip L. Gregory
GREGORY LAW GROUP
1250 Godetia Drive
Redwood City, CA 94062

---

[10] If en banc review is not granted, at very least the panel's opinion should be clarified to state the dismissal is *with* prejudice to leave to amend only, and is *without* prejudice to the merits. *Barke v. Banks*, 25 F.4th 714, 721 (9th Cir. 2022).

(650) 278-2957
pgregory@gregorylawgroup.com

Daniel C. Snyder
Haley Nicholson
PUBLIC JUSTICE
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 797-8600
dsnyder@publicjustice.net
hnicholson@publicjustice.net

*Counsel for Plaintiffs-Appellants*

18

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form:* *https://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** 25-6714

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached petition for panel

rehearing/petition for rehearing en banc/response to petition is *(select one)*:

⦿ Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words:** 4,199 .
*(Petitions and responses must not exceed 4,200 words)*

**OR**

◯ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** Julia A. Olson **Date** July 16, 2026
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 11** *Rev. 12/01/24*

# APPENDIX A

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUN 2 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| EVA LIGHTHISER; RIKKI HELD; LANDER BUSSE; OLIVIA VESOVICH; KATHRYN GRACE GIBSON-SNYDER; GEORGIANNA FISCHER; TALEAH HERNANDEZ; B.B., a minor, by and through his guardian S.B.; J.K., a minor, by and through his guardian L.A.; N. K., a minor, by and through his guardian L.A.; ULA JONES; RIPLEY CUNNINGHAM; J.M., a minor, by and through her guardian C.M.; J.H., a minor, by and through his guardian M.H.; I.H., a minor, by and through his guardian M.H.; KALALAPA WINTER; C.M., a minor, by and through her guardian E.M.; DELANEY REYNOLDS; AVERY MCRAE; MIKO VERGUN; ISAAC VERGUN; JOSEPH LEE, | No. 25-6714 <br><br> D.C. No. 2:25-cv-00054-DLC <br><br> MEMORANDUM* |
|         Plaintiffs - Appellants, | |
|  v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States; EXECUTIVE OFFICE OF THE PRESIDENT OF THE UNITED STATES; UNITED STATES OFFICE OF MANAGEMENT AND BUDGET; | |

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

RUSSELL VOUGHT, in his official capacity as Director of the Office of Management and Budget; JEFFREY BOSSERT CLARK, in his official capacity as Acting Administrator of the Office of Information and Regulatory Affairs; UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; LEE ZELDIN, in his official capacity as Administrator of the United States Environmental Protection Agency; UNITED STATES DEPARTMENT OF THE INTERIOR; DOUG BURGUM, in his official capacity as Secretary of the Interior; UNITED STATES DEPARTMENT OF ENERGY; CHRIS WRIGHT, in his official capacity as Secretary of Energy; UNITED STATES DEPARTMENT OF TRANSPORTATION; SEAN DUFFY, n his official capacity as Secretary of Transportation; UNITED STATES ARMY CORPS OF ENGINEERS; WILLIAM H. GRAHAM, Jr., Lieutenant General, in his official capacity as Chief of Engineers and Commanding General of the United States Army Corps of Engineers; JANET PETRO, in her official capacity as acting NASA Administrator; NATIONAL AERONAUTICS AND SPACE ADMINISTRATION; UNITED STATES DEPARTMENT OF COMMERCE; HOWARD W. LUTNICK, in his official capacity as Secretary of Commerce; NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION; LAURA GRIMM, in her official capacity as acting NOAA Administrator; NATIONAL SCIENCE FOUNDATION; BRIAN STONE, in his official capacity as Acting Director of NSF; UNITED STATES

2

25-6714

DEPARTMENT OF HEALTH AND
HUMAN SERVICES; ROBERT F.
KENNEDY, Jr., in his official capacity as
Secretary of HHS; NATIONAL
INSTITUTE FOR ENVIRONMENTAL
HEALTH SCIENCES; JAYANTA
BHATTACHARYA, in his official capacity
as Director of NIH; UNITED STATES OF
AMERICA,

Defendants - Appellees,

STATE OF MONTANA; STATE OF
ALASKA; STATE OF ARKANSAS;
STATE OF FLORIDA; STATE OF
GEORGIA; STATE OF IDAHO; STATE
OF INDIANA; STATE OF IOWA; STATE
OF KANSAS; STATE OF LOUISIANA;
STATE OF MISSOURI; STATE OF
NEBRASKA; STATE OF NORTH
DAKOTA; STATE OF OKLAHOMA;
STATE OF SOUTH DAKOTA; STATE OF
TEXAS; STATE OF UTAH; STATE OF
WEST VIRGINIA; STATE OF
WYOMING; GOVERNMENT OF GUAM,

Intervenor-Defendants -
Appellees.

Appeal from the United States District Court
for the District of Montana
Dana L. Christensen, District Judge, Presiding

Argued and Submitted April 13, 2026
Portland, Oregon

Before: OWENS, VANDYKE, and SUNG, Circuit Judges.

Plaintiffs-Appellants are children and young adults who challenge three

3                                                        25-6714

executive orders signed by President Trump (collectively, the "Executive Orders") that set several broad directives for federal energy policy and direct agencies to implement those directives "in a manner consistent with applicable law." *See* Exec. Order No. 14154, 90 Fed. Reg. 8353, 8359 (Jan. 20, 2025); Exec. Order No. 14156, 90 Fed. Reg. 8433, 8437 (Jan. 20, 2025); Exec. Order No. 14261, 90 Fed. Reg. 15517, 15519 (Apr. 8, 2025). Plaintiffs appeal the district court's dismissal of their complaint for lack of Article III standing and the district court's denial of leave to amend their complaint.

We review de novo the district court's dismissal for lack of Article III standing, *Satanic Temple v. Labrador*, 149 F.4th 1047, 1050 (9th Cir. 2025), and review for abuse of discretion the district court's denial of leave to amend, *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Bonta*, 33 F.4th 1107, 1113 (9th Cir. 2022). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1. Plaintiffs have not plausibly alleged that their asserted injuries are "caused by the challenged" Executive Orders. *Juliana v. United States*, 947 F.3d 1159, 1168 (9th Cir. 2020).[1] According to the complaint, Plaintiffs will be harmed by numerous agency actions which, Plaintiffs allege, will "implement" the Executive Orders over several years. But Plaintiffs can only speculate that the Executive Orders are the

---

[1] We do not reach whether Plaintiffs' asserted injuries satisfy Article III's injury-in-fact requirement.

25-6714

cause of the many agency actions they allege will exacerbate climate change. *See G.B. ex rel. G.P. v. EPA*, 172 F.4th 1042, 1060 (9th Cir. 2026) ("[A]gencies consider a great number of … factors in determining when, what, and how to regulate or take agency action." (citation modified)); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412–14 (2013) (rejecting traceability theory premised on speculation that government surveillance would occur, if at all, under challenged authority rather than another). Furthermore, Plaintiffs seek to enjoin *any* "implementing" agency action, including those not identified in the complaint. But we "cannot presume to predict how governing officials might exercise their discretion." *G.B.*, 172 F.4th at 1059 (citation modified). Whether agencies will rely on the Executive Orders when taking future action "is mere conjecture." *Id.* at 1061 (citation modified). For these reasons, the link between the Executive Orders and Plaintiffs' alleged injuries is too speculative to support Article III standing. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024); *G.B.*, 172 F.4th at 1058–62.

2. Plaintiffs' requested injunctive relief is also neither "substantially likely to redress their injuries" nor "within the district court's power to award." *Juliana*, 947 F.3d at 1170 (citation omitted).

As to the first redressability prong, Plaintiffs' standing theory suffers from a defect that mirrors their traceability problems. *See All. for Hippocratic Med.*, 602 U.S. at 380–81 (noting that "causation and redressability … are often flip sides of

25-6714

the same coin" (citation modified)).  They have not plausibly alleged that enjoining federal agencies from implementing the Executive Orders is substantially likely to prevent agencies from taking similar emissions-inducing actions under other lawful authorities.

Second, as in *Juliana*, Article III does not give federal courts the power to grant or enforce the injunctive relief Plaintiffs seek.  *Juliana*, 947 F.3d at 1171.  The Executive Orders state the President's national security, energy, and economic policy in broad terms, then direct executive branch agencies to pursue these policy goals consistent with applicable law.  Plaintiffs' requested injunction, by its terms, would prevent the President from concluding, among other things, that it is "in the national interest to unleash America's affordable and reliable energy and natural resources," Exec. Order No. 14154, 90 Fed. Reg. at 8353; that current energy infrastructure is "far too inadequate to meet our Nation's needs," Exec. Order No. 14156, 90 Fed. Reg. at 8433; and that "coal is essential to our national and economic security," Exec. Order No. 14261, 90 Fed. Reg. at 15517.  The requested injunction would likewise bar agencies from effectuating the President's policies—"consistent with applicable law"—by reconsidering prior actions, "encourag[ing] energy exploration and production on Federal lands and waters," and "protect[ing] the United States's economic and national security … by ensuring that an abundant supply of reliable energy is readily accessible in every State and territory of the

Nation." Exec. Order No. 14154, 90 Fed. Reg. at 8353–54.

Issuing such an injunction would effectively place one federal district court in charge of executive branch energy policy—"an extraordinary and unprecedented role" for a member of the "unelected and politically unaccountable branch." *Juliana*, 947 F.3d at 1173 (citation omitted); *see also id.* at 1171–72 (crafting environmental policy involves "a host of complex policy decisions entrusted … to the wisdom and discretion of the executive and legislative branches" (citation modified)).

Plaintiffs argue that, unlike the *Juliana* plaintiffs, who sought a court-supervised "remedial plan" requiring the federal government to "draw down harmful emissions," *id.* at 1170–72, they seek only "traditional prohibitory injunctive relief." But like the district court, we are not persuaded. Similar to the injunction requested in *Juliana*, the injunction Plaintiffs seek would require extensive judicial supervision of executive branch actions related to energy policy. Indeed, Plaintiffs explicitly seek to undo everything from staffing reductions, to the revocation of research grants, to anticipated rule changes, to the type of language the current administration has used on government websites. To assign such policy-laden choices to one district court would invert the "common understanding of what activities are appropriate to legislatures, to executives, and to courts." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

Moreover, as the district court recognized, enforcing such an injunction would

7

25-6714

require a court to determine whether "an untold number" of executive branch actions even "implement" the challenged Executive Orders. That task would present challenging questions that "necessarily would entail a broad range of policymaking." *Juliana*, 947 F.3d at 1172. For example, would the injunction prohibit agencies from advancing *any* policies like those expressed in the Executive Orders—promoting coal, oil, natural gas and hydropower; increasing domestic energy production; or expediting permitting and leasing timelines, to name a few? For every energy-policy action, would the court need to scrutinize agency officials' motives in search of *any* hidden reliance on the enjoined Executive Orders? And what if an agency were to rely on other authorities in addition to the Executive Orders? The district court correctly recognized that disputes over such questions would inevitably result in the court "spending a lot of time together" with the parties and holding hearings "until the expiration of [their] collective lifetimes." These unmanageable consequences, for which there are no judicially manageable standards, confirm that Plaintiffs' requested injunction is beyond Article III power. *Juliana*, 947 F.3d at 1173–75. After all, an injunction "is only as good as the court's power to enforce it." *Id.* at 1173.

Further, by effectively challenging hundreds of current and anticipated agency actions in one lawsuit, Plaintiffs seek to circumvent the jurisdictional and procedural rules Congress has established for challenges to agency actions. *See, e.g.*, 5 U.S.C.

25-6714

§§ 702, 704, 706; 42 U.S.C. § 7607(b)(1).  Such a sweeping injunction against hundreds of agency actions in one lawsuit is unprecedented.  *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 892–94 (1990) (explaining that rather than "wholesale" challenges to "flaws in the entire program," a "case-by-case approach … is the traditional, and remains the normal, mode of operation of the courts" (citation modified)); *see also Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 74 (1996) ("Where Congress has created a remedial scheme for the enforcement of a particular federal right, we have, in suits against federal officers, refused to supplement that scheme with one created by the judiciary.").

3.  Plaintiffs also argue that declaratory relief alone will likely redress their injuries.  We have twice rejected the same argument.  *See Juliana*, 947 F.3d at 1170 (holding that declaratory relief was "unlikely by itself to remediate [the plaintiffs'] alleged injuries absent further court action"); *G.B.*, 172 F.4th at 1062–63 (describing *Juliana* as a "strikingly similar lawsuit" and holding that declaring the challenged policies unconstitutional was unlikely to "mitigate the young plaintiffs' physical symptoms or property damage").  And we do so again here: declaratory relief "alone is not substantially likely to mitigate the [P]laintiffs' asserted … injuries." *Juliana*, 947 F.3d at 1170; *see G.B.*, 172 F.4th at 1063.

4.  The district court did not abuse its discretion when it declined to allow Plaintiffs to amend their complaint.  Plaintiffs contend that they should have been

9

allowed to amend their complaint to "cure any possible redressability defects." But where Plaintiffs have not identified "specific allegations that might rectify" the fundamental problems with their standing theory, *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011), there is no abuse of discretion. *See G.B.*, 172 F.4th at 1065 (affirming denial of leave to amend because plaintiffs' standing theories contained "deep, fundamental flaws at odds with principles of Article III standing").

**AFFIRMED.**